## Mazer et al. v. Hazard Realty Corporation et al.

May 14, 1940.

S. M. Ward, Judge.

284

Willis W. Reeves, T. E. Moore and Richard P. Dietzman for appellants.

J. W. Craft, W. E. Faulkner, Jesse Morgan, M. K. Eblen and S. S. Willis for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

About the year 1923 D. Y. Combs completed a 5-story hotel building on Main street in Hazard, the foundation of which was made of native stone and the walls of brick and stone. The interior of the building consisted of steel framing, reinforced concrete, etc. The lot on which the building stood fronted on Main street, a distance of approximately 80 feet and ran back the same width to the Kentucky river. The building which was about 72 by 125 feet was partially destroyed by fire in 1928.

In the meantime D. Y. Combs died and his widow and heirs who inherited the property had issued bonds in the sum of approximately $180,000 secured by first mortgage or deed of trust to the Hargis Bank & Trust Company of Jackson. The Hargis Bank & Trust Company pledged a number of the bonds of a par value of about $165,000 as collateral to the Fifth Third National Bank at Cincinnati and the remaining bonds in the sum of about $15,000 were in some way transferred to and held by the Perry Bank & Trust Company of Hazard. Both the Hargis Bank & Trust Company and the Perry Bank & Trust Company failed and were placed in charge

of the state banking department for the purpose of liquidation. The bonds were credited by $82,707.15 paid to the trustee on insurance policies covering the building. The president of the Hargis Bank & Trust Company, the trustee, had by some character of writing given or attempted to give to the Bank of Commerce of Lexington, and the First National Bank of Louisville, liens second to the lien held by the Fifth Third National Bank of Cincinnati to secure the sums of $15,000, $10,000 and $10,000, respectively.

In a foreclosure action in the Perry circuit court by the Hargis Bank & Trust Company and all other banks which held or had liens on the bonds against the widow and heirs of D. Y. Combs a decree was entered directing a sale of the Combs hotel property to satisfy the mortgage indebtedness, it being provided in the judgment that all outstanding mortgage bonds against the property should be surrendered to the master commissioner, and filed with his report of sale. It was further provided in effect that if the holder of the bonds became the purchaser, then to the extent of the value of the bonds no sale bond except for costs would be required.

Before the sale of the property was made, the Fifth Third National Bank of Cincinnati had procured a decree of the district court of the United States at Cincinnati for a sale of the bonds pledged to it and W. A. Stanfill, for himself, and for Dewey Daniel, C. V. Cooper, F. L. Cisco and J. W. Craft, became purchaser of the bonds at the sale held by the United States marshall for the sum of $2,001. These purchasers agreed to and did form a corporation with an authorized capital of $20,000. While the charter authorized the corporation to own, hold and lease real estate, etc., it appears from the record that it was organized for the sole purpose of acquiring and holding title to the Combs hotel property. The corporation or some of the individual stockholders by bill of sale acquired from F. L. Cisco, liquidating agent of the Perry Bank & Trust Company, the mortgage bonds held by it. All of these bonds were surrendered to the master commissioner of the Perry circuit court and at a sale of the Combs hotel property by the master commissioner the corporation became the purchaser for the sum of $15,000.

At and prior to the time the corporation acquired the Combs hotel property Max Mazer and Goldie Mazer, husband and wife, owned an adjoining lot improved by a 3-story building fronting on Main street and what is referred to as an apartment building on the rear of the lot. On January 25 a contract was entered into between the corporation and the Mazers wherein it was recited that the parties had mutually agreed that it would be to the best interests of both to combine their property, placing it under one management and in one title; that the Mazers would convey to the corporation their lot and building on the condition that the corporation increase its capital stock to an amount not to exceed $200,000 and issue to the Mazers one-half thereof, the conveyance to be made subject to the indebtedness owing by the Mazers to the Commonwealth Life Insurance Company and the balance on a mortgage to Abe Elvove which had been reduced to judgment and the indebtedness owing by the Mazers to the Peoples Bank of Hazard; that the corporation should assume and pay off all such indebtedness; that the corporation should procure confirmation of the sale of the Combs hotel property, pay off and discharge the sale bonds and balance of the purchase price and all past-due taxes against the property out of the funds of the corporation paid into it by the incorporators or stockholders, other than the Mazers, and remove such part of the walls of the Combs hotel as was considered dangerous and as directed by the judgment of the Perry circuit court; that the conveyance by the Mazers to the corporation should not be made until all this had been done and the Combs hotel property should be free from any charge by reason of any of the items mentioned. It was further agreed that when the stockholders, other than the Mazers, had complied with the foregoing conditions, the Mazers would convey their lot to the corporation and when the stock had been increased to an amount to be agreed upon between the parties to the contract, the stockholders, other than the Mazers, would be entitled to one-half of all such stock and the Mazers to the other one-half thereof; that a building should be erected by the parties in the name of the corporation upon the Combs hotel lot which should be planned so as to connect with and be run and maintained in connection with the Mazer building. However, before all the conditions recited in

the contract had been complied with, the Mazers conveyed their property to the corporation and by agreement of all parties, the articles of incorporation were amended increasing the capital stock to $100,000, one-half of which was issued to the Mazers and the remainder in equal parts to Dewey Daniel, W. A. Stanfill, F. L. Cisco and C. V. Cooper. Before the increase of the capital stock, J. W. Craft, one of the original stockholders, decided to and had by agreement dropped out of the corporation. After the consolidation of the properties the Combs building was reconstructed to a height of 4 stories but the foundations and a great portion of the walls were left intact and brick from portions of the walls torn down were cleaned and with steel and other materials from the old building were used in the reconstruction.

On October 19, 1938, Max Mazer and Goldie Mazer instituted this action in equity against the corporation, Daniel, Cisco, Cooper and Stanfill and in their petition alleged in substance that none of the original $20,000 authorized capital of the corporation was subscribed for except 3 shares each issued to Daniel, Stanfill and Craft and that none of the stock was paid for. They set out the foregoing facts relative to the conveyance of their property to the corporation and alleged that in consideration thereof the corporation issued to Goldie Mazer 497 shares of the stock and to Max Mazer 3 shares thereof, of a par value of $100 each and in the same meeting the individual defendants who were 3 of the 5 directors of the corporation, acting together, caused stock of a par value of $12,500 to be issued to each of them; that such individual defendants had conveyed no property to the corporation, rendered no service and had paid nothing for any of the shares of stock so issued to them and same were issued unlawfully, fraudulently and for the purpose of cheating and defrauding the corporation and to the impairment of the value of the stock of plaintiffs; that the individual defendants claim to own stock equal in amount to that owned by plaintiffs and plaintiffs are unable to change the directors of the corporation; that defendants have and will vote their stock in a solid block and continue to keep themselves in office; that such defendants have operated the corporation for their own private and individual interests and against the interests of the corporation and the other stockhold-

ers and have caused the corporation to pay out large sums owed by themselves and have charged same to the corporation; that they requested the corporation to pass resolutions canceling the stock of the individual defendants but such request had been refused.

They prayed that all shares of stock issued by the corporation to the individual defendants be canceled and that such defendants be required to render an accounting and pay into the corporation all such sums as the corporation has paid out for their individual benefit, etc.

Subsequent pleadings set out at length details of the transaction between the parties but it is unnecessary to go into a discussion of the other pleadings except to say that the answer consisted of a traverse and plea of estoppel. After hearing the evidence which covers more than 1,000 pages of the record, the chancellor adjudged that plaintiffs were not entitled to any relief sought and that their petition be dismissed. They are appealing.

It is argued in substance by counsel for appellants that the individual appellees only paid into the corporation the sum of $2,001 which the Combs hotel bonds cost them and other ledger account credits of $5,599.50 or a total of $7,600.50 for which they were issued stock of a par value of $50,000 and that under section 193 of the Constitution of Kentucky and section 568, Kentucky Statutes, $42,399.50 of the par value of the stock is void and should be canceled; and this even though both the corporation and the recipients of the stock knew all about the transaction and consented to it at the time; that the individual appellees are liable for the par value of the stock issued to them to the extent that same was in excess of its equivalent in money paid or labor done or property actually received by the corporation and to the extent the value has not been paid, the stock should be canceled; (2) that the individual appellees were promoters of the Hazard Realty Corporation and as such occupied a fiduciary relationship and equity will not tolerate unconscionable dealings by them; (3) that the individual appellees are still using the funds of the corporation and for their individual benefit.

The evidence concerning the value of the Combs hotel property at the time the properties were combined took a very wide range. The evidence of appellants and

their witnesses fixed the value of the property, including the lot and portion of the building remaining, at from $10,000 to $12,000, while the value of the same property as fixed by appellees and their witnesses ranged from $40,000 to $70,000 or $80,000. A number of witnesses who testified that they were acquainted with real estate values in Hazard fixed the value of the lot alone at from $400 to $600 a front foot. An engineer who testified that he had considerable experience in constructing buildings and who supervised the reconstruction of the Combs hotel building entered into detailed estimates of the value of the various materials in the building which were used in the reconstruction thereof, fixed their value at something over $50,000. Frank B. Wilson, manager of the Western Adjustment and Inspection Company for Kentucky and Southern Indiana testified that acting on behalf of the insurance companies, he adjusted the loss in the Combs hotel building after the fire; that in making the adjustment it was agreed that the salvage value of the building was $75,680. The value of the Combs hotel property was set up in records of the corporation at $60,000 and there is evidence that Max Mazer offered $40,000 for it after the fire. He denies offering them that sum.

There is evidence to the effect that the mortgage bonds sold for less than their value because of a controversy between the president of the Hargis Bank & Trust Company and the Fifth Third National Bank as to the amount owing by the former to the latter and threatened litigation by the former and by the Combs heirs. Also because of rumors concerning tax liens, etc. There is also evidence that because of the general knowledge that the individual appellees had acquired the mortgage bonds and could bid the full par value thereof for the property without incurring further liability, theirs was the only bid made at the commissioner's sale.

There is a conflict in evidence concerning the condition of the foundation, the concrete floors in the basement, boilers used for heating and the brick and stone walls that were left intact and utilized in the reconstruction of the building. There is likewise a conflict in evidence concerning the negotiations between the Mazers and the individual appellees leading up to the contract

entered into between them and the corporation. Mr. and Mrs. Mazer testified that they were approached by the individual appellees with the proposition to combine their properties and were urged into assenting to the agreement; that they understood that the individual appellees and not the corporation were to assume and pay all the indebtedness of the Mazers mentioned in the contract; that the individual appellees called upon them time and again in regard to the matter; that Messrs. Stanfill and Craft were law partners and that Stanfill had represented them in all their litigation for a number of years; that they had the utmost confidence in him and that he assured them he would take care of their interests in the contract and they relied on him to do so.

The individual appellees testified that as soon as it was learned that they had purchased the bonds and would acquire the Combs hotel property, they were approached by the Mazers with a proposition to combine the properties; that the Mazers persisted in their efforts to have this done until the agreement was finally reached; that there were judgments against the Mazers and they were being pressed on other lien indebtedness against their property including taxes and that Mazer stated that if this arrangement could not be made he would likely be forced into bankruptcy. Mr. Stanfill testified that when the parties met at his office to prepare the contract, he, because of his interest in the matter, advised the Mazers to employ an attorney to represent them. In this he was corroborated by the individual appellees and by Craft; that Mazer insisted that he did not need an attorney. They further testified that it was fully agreed and understood that the indebtedness of the Mazers would be paid by the corporation and not by the individual appellees. After Mazer deeded the property to the corporation they and the corporation entered into a supplemental contract which recited that the deed did not set forth the full consideration for the transfer and wherein it was set out in detail that the Hazard Realty Corporation was to pay off and discharge the indebtedness against the Mazers as specified therein aggregating something over $32,000; that this was done at the instance of the Mazers and the individual appellees testified that he wanted this supplemental contract to show his creditors that the

corporation had assumed the liability so they would not be pressing him.

Some checks of the corporation were given for the individual indebtedness of the individual appellees or which they had assumed under the contract; but Mr. Mazer employed a certified accountant to make an audit of the corporation affairs and accounts and he was later employed by the corporation to make a more detailed audit. The audit made by this accountant is found in the transcript of the evidence. The auditor testified that the checks of the corporation given for individual indebtedness of individual appellees had been charged to them on the books of the corporation or had been credited on accounts owed by the corporation to the individual appellees; that while the system of book-keeping adopted was bad and that he set up a new system for the corporation, the accounts were regular; that the individual appellees had not benefited at the expense of the corporation or other stockholders. Every questioned item was fully explained.

Section 193 of the Constitution provides:

"No corporation shall issue stocks or bonds except for an equivalent in money paid or labor done, or property actually received and applied to the purposes for which such corporation was created, and neither labor nor property shall be received in payment of stocks or bonds at a greater value than the market price at the time such labor was done or property delivered, and all fictitious increase of stock or indebtedness shall be void."

Section 568 of the Statutes is in substance and effect the same.

These constitutional and statutory provisions are so clear, concise and free of ambiguity as to render them self-interpretative and leave no doubt concerning their meaning and purpose. It is manifest that it was intended that when stock of a fixed par value is issued by a corporation the corporation should receive its equivalent, either in money, property or in services rendered. Many of the states have similar constitutional or statutory provisions and courts in such states have condemned attempts to evade such provisions by simulation or artifice and have recognized that nothing short of

payment in full, if in cash, will meet their requirements; but that if stock has been exchanged for services rendered or property received the transaction must be attended with utmost good faith and that the value of the services performed or property received should not be so disproportionate to the value of the stock issued as not to substantially comply with the constitutional or statutory provisions. The provisions are impressed with a public interest and their primary purpose is to prevent fraud and to protect creditors or purchasers of stock or securities of corporations. It has been held by this court that creditors of corporations may exact compliance with them. See People's State Bank v. Jacksonian Hotel Company, 261 Ky. 166, 87 S. W. (2d) 111, and authorities therein cited.

The chancellor did not rest his finding or judgment on the ground that the Combs hotel property was equivalent in value to stock issued to the individual appellees but rather on the ground that the properties combined under the contract and now held by the corporation represented a value equal to and even greater than the par value of all the stock issued. He also applied the doctrine of estoppel and held that in the proven circumstances it would be inequitable to cancel the stock of the individual appellees and thus unduly enrich appellants at their expense.

We note, as did the chancellor, that appellants are not asking for a rescission of the contract or for the cancellation of their stock and the restoration of their property on the ground of fraud, misrepresentation or unfair dealing upon the part of the corporation or its other stockholders; and it is quite manifest that the evidence would not have warranted the court in granting such relief had they asked it. Appellants had known the Combs hotel property for a number of years before the fire and knew its condition thereafter and were in as good position to judge its value as were the individual appellees. They knew that this property and the assumption of their indebtedness was the only consideration for their agreement to convey their property to the corporation and their claim that they were misled as to the provisions of their contract is thoroughly refuted by both the original and supplemental contracts and by the evidence of the individual appellees as well

as by many circumstances and inescapable inferences arising therefrom. They had every opportunity to read and know the provisions of the contract and the evidence for appellees is to the effect that it was read by them and that Max Mazer took it home for his wife to read and returned it, stating that it was all right. Not only so but after the deed was made, pursuant to the contract, Mazer had the supplemental contract executed which fully set forth in plain terms the matters about which he claims he was misled. He and his wife were made directors and officers of the corporation and he took an active part in the reconstruction of the Combs hotel building. He had an opportunity to and the evidence indicates that he did know about the management of the property and the minutes and records of the meetings and actions of the directors of the corporation. If appellants were misled or imposed upon in any way by the corporation or the individual appellees they knew or had every opportunity to have known of it immediately after the transaction was completed and yet they permitted matters to run along for over three years and until conditions had materially changed before they attempted to assert their alleged rights.

As indicated by the evidence of appellants and as stated in their brief the property conveyed by them to the corporation is worth well over $100,000. Add to this the value of the Combs hotel property, even as fixed by appellants, and it will be seen that the capital assets of the corporation greatly exceeded the par value of all its shares of capital stock. Therefore, according to appellants' own evidence, the public and creditors are afforded all protection contemplated by the Constitution and Statutes; and the chancellor was authorized to conclude under the evidence that appellants are in no position to complain. The evidence affords ample basis for a conclusion that if appellants in fact suffered any loss in the transaction it was not due to fraud, misrepresentation or deceit upon the part of appellees but rather to bad business judgment and unwise bargaining upon the part of appellants and equity affords no immunity from the latter.

Authorities indicate that the doctrine of estoppel may be applied in circumstances shown. See 13 Am. Jur. 359, section 258; 18 C. J. S., Corporations, sec. 245,

294

pages 691, 692. However, if there be any doubt concerning the sufficiency of the grounds upon which the finding of the chancellor is based the preponderating weight of evidence is to the effect that the Combs hotel property was of equal or greater value than the par value of the stock issued to the individual appellees and for this reason, if for no other, the appellate court would not be authorized to disturb the judgment even though it may have been based upon a different or even erroneous ground.

As will be seen from our recitation of the evidence, the chancellor was fully warranted in finding that the books and accounts of the corporation had been correctly kept and that defendants have not been using the funds of the corporation to their own benefit or emolument.

Judgment affirmed.