**Sidney HAGAN, Jr., Cecil Robinson, and Kentucky Home Liquors, Inc., Appellants,**

v.

**Edward A. FARRIS, Donald Grugin, and Martin Hogan (together constituting the Alcoholic Beverage Control Board of Kentucky) and Bloomfield Liquors, Inc., Appellees.**

No. 90–SC–361–DG.

Supreme Court of Kentucky.

April 11, 1991.

Phillip J. Shepherd, Joe Francis Childers, Jr., Shepherd & Childers, Frankfort, for movants, appellants.

Catherine C. Staib, Gen. Counsel, Alcoholic Beverage Control, Frankfort, for respondents, appellees Edward A. Farris, Donald Grugin and Martin Hogan.

Frank E. Haddad, Jr., Leon J. Shaikun, Ronald P. Hillerich, Louisville, for respondent, appellee Bloomfield Liquors, Inc.

SPAIN, Justice.

This case arises out of a dispute over the granting of a retail package liquor license by the appellee, Kentucky Alcoholic Beverage Control Board (hereinafter "ABC Board"), to the appellee, Bloomfield Liquors, Inc. (hereinafter "Bloomfield Liquors"). Appellants Hagan and Robinson, shareholder and employee, respectively, of appellant Kentucky Home Liquors, Inc., protested Bloomfield Liquors' application to the ABC Board, which granted the license after a hearing. The appellants appealed the ABC Board's decision to the Franklin Circuit Court, and in turn to the Court of Appeals, both of which affirmed. We granted discretionary review from the decision of the Court of Appeals.

In May 1985, Ray Houghlin acquired the real estate and rights to a retail package liquor license from FMJ, Inc., which had operated a liquor store in the city of Bloomfield, Kentucky, across the street from Houghlin Funeral Home. Houghlin then closed the liquor store, had the building razed, and had a parking lot constructed in its place.

Houghlin applied to the ABC Board to have the liquor license placed in dormant status pending his location of a buyer. The ABC Board granted the request and placed the license in dormancy for a period of ninety days. Houghlin subsequently requested and was granted seven additional ninety-day dormancy period extensions, the last of which expired on July 26, 1987. Houghlin was also allowed by the ABC Board to renew his license twice by paying annual renewal license fees during the two-year period of dormancy. Houghlin never made active use of the liquor license by the operation of a liquor business.

Houghlin sold the liquor license to Bloomfield Liquors on July 26, 1987. A protest of Bloomfield Liquors' application to transfer this liquor license was made by the appellants to the ABC Board. A hearing was held by the ABC Board to consider the appellants' protest. Appellants argued at the hearing that, pursuant to 804 KAR 4:110, the liquor license had lapsed and become void because the license had been dormant for two years. They also argued that the granting of this license violated the mandatory quota of liquor licenses allotted by the ABC Board for Nelson County.[1] The ABC Board overruled the protest and granted Bloomfield Liquors its license.

Appellants then filed an appeal of the ABC Board's decision with the Franklin Circuit Court. On appeal, the appellants continued to argue that Houghlin's liquor license could not be transferred because it was null and void under the regulation. The appellees argued that the separate "buy-out" provision of 804 KAR 4:110(4)(a) was applicable to the license in question. This provision allows the ABC Board, upon notice of a buy-out, to extend a license thirty days beyond the date of expiration of seller's license. The regulation also gives the Distilled Spirits Administrator discretion in extending the time for filing a renewal application for a "reasonable length of time." *Id.* The trial court upheld the ABC Board's ruling granting the transfer of this liquor license. However, in doing so, it noted that the ABC Board's interpretation of 804 KAR 4:110 was "tortured at best" and defeated the regulation's purpose. The trial court also noted that holding a license in dormancy for a period of two years could by no stretch of the imagination be interpreted as a "buy-out" situation under 804 KAR 4:110(4)(a). As noted

---

1. Nelson County, under ABC Board regulations, has a quota of twelve licenses. Currently, fourteen licenses are in operation in Nelson County since two licenses were "grandfathered in" when the regulation setting up quotas was adopted. The granting of this license will result in fifteen licenses in operation in Nelson County.

above, the trial court nevertheless affirmed the ABC Board's decision because of the continuing practice of the ABC Board to grant such extensions and the strong detrimental reliance thereon by Houghlin in receiving these extensions and in being permitted to pay his annual license renewal fees.

The Court of Appeals unanimously affirmed the trial court in approving the transfer of the liquor license to Bloomfield Liquors, Inc., solely because there was strong detrimental reliance by both Houghlin and Bloomfield Liquors on the ABC Board's decades-old, consistent interpretation of the dormancy regulation. The Court of Appeals at the same time condemned the ABC Board's interpretation of its regulations, but applied its decision prospectively and held that its ruling would not affect the license granted to Bloomfield Liquors or any of the liquor licenses that were currently under dormant status as of the date of its opinion for alleged "buy-outs." (Thirty-five package liquor licenses and twenty-nine drink liquor licenses.)

■ We agree with the Court of Appeals. The facts in this case do not support the Board's interpretation that the entire dormancy period of the Houghlin license should be covered by the "buy-out" exception. Houghlin's immediate intention in buying the license from FMJ, Inc., clearly was to demolish the liquor store building and provide additional parking for his funeral home. There was no evidence of any pending "buy-out" negotiations thereafter until immediately before the transfer to Bloomfield Liquors, two years later. To permit this practice to continue is to grossly abuse the dormancy provisions of the regulations.

■ An agency must be bound by the regulations it promulgates. *Shearer v. Dailey*, 312 Ky. 226, 226 S.W.2d 955 (1950). Further, the regulations adopted by an agency have the force and effect of law. *Linkous v. Darch*, 323 S.W.2d 850 (1959). An agency's interpretation of a regulation is valid, however, only if the interpretation complies with the actual language of the regulation. *Fluor Constructors, Inc. v.*

*Occupational Safety and Health Review Commission*, 861 F.2d 936 (6th Cir.1988). KRS 13A.130 prohibits an administrative body from modifying an administrative regulation by internal policy or another form of action.

■ We agree that Houghlin had placed strong reliance on the ABC Board's interpretation of its own regulation. Houghlin followed the established ABC Board practice of filing dormancy extension requests to keep his license in dormant status. Houghlin was also allowed by the ABC Board to renew his license by the payment of two annual license fees. In most cases, an agency's interpretation of its own regulations is entitled to substantial deference. *Fluor Constructors, Inc., supra.* A construction of a law or regulation by officers of an agency continued without interruption for a long period of time is entitled to controlling weight. *Barnes v. Department of Revenue*, Ky., 575 S.W.2d 169 (1978). It is usually the practice to conform to an agency's construction when that agency was responsible for a regulation's adoption. *Passafiume v. Shearer*, Ky., 239 S.W.2d 456 (1951). We believe that, because of Houghlin's reliance and the ABC Board's continued misinterpretation of its own regulation, it would be unfair and unjust to overrule the ABC Board's decision and rule that Houghlin had no license to transfer to Bloomfield Liquors.

We agree with the Court of Appeals that the decision in this case should be applied prospectively so as to provide an equitable result to the licensees who had liquor licenses in dormant status as of the date of the Court of Appeals' opinion. It is within the inherent power of a Court to give a decision prospective or retrospective application. *Lasher v. Commonwealth*, Ky., 418 S.W.2d 416 (1967). It is further permissible to have a decision apply prospectively in order to avoid injustice or hardship. *Jacobs v. Lexington–Fayette County Urban Government*, Ky., 560 S.W.2d 10, 14 (1978). This is true where property rights are involved and parties have acted in reliance on the law as it existed, and a contrary result would be unconscionable.

*Bishop v. Bishop*, Ky., 343 S.W.2d 587 (1961).

The decision of the Court of Appeals is affirmed.

LAMBERT, LEIBSON and REYNOLDS, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion, in which STEPHENS, C.J., joins.

COMBS, J., not sitting.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because it tolerates an inexcusable practice by the Alcoholic Beverage Control Board which is contrary to law and is not necessary under all the circumstances.

Although it is difficult to disagree with the skillfully written majority opinion and its application of equitable principles in a prospective manner in order to avoid a possible injustice or hardship, I believe that we cannot continue to tolerate the clear disregard of the applicable regulations and statutes by the ABC Board.

It is abundantly clear that the existing regulations regarding licenses were not followed. Any agency must be bound by its own regulations. *Shearer v. Dailey*, 312 Ky. 226, 226 S.W.2d 955 (1950).

The Court of Appeals erred in excluding Bloomfield from the application of its decision because under principles of equity a court cannot grant relief to a party whose reliance on a practice of the Board is at variance with the plain language of a regulation and was not reasonable. The authority of the court is limited, and the Court of Appeals exceeded the scope of its review power when it attempted to act under general principles of equity. *See* K.R.S. 243.-570(2).

The sole issue presented here is whether the ABC Board acted in excess of its power by issuing the license in violation of the dormancy regulation. The Board has unquestionably attempted to alter and expand its own administrative regulation through a private internal policy which is at variance with the plain language of the regulation.

Such behavior is specifically prohibited by K.R.S. 13A.130.

The application of general principles of equity regarding reliance is not proper in this situation. In order for reliance to be considered, such reliance must be reasonable. It was not reasonable or prudent for the licensee to rely on the practice of the Board when it clearly conflicted with the promulgated provisions of the administrative regulations. Bloomfield must be charged with legal knowledge of the regulations of the Board. It is not in a position to assert reliance when it purchased a license which is invalid under the clear language of the dormancy regulation. Action based on a prohibited internal policy does not elevate the decision above a mere business decision with full knowledge of the potential risk. Equity can afford no relief from an imprudent business judgment. *Mazer v. Hazard Realty Corp.*, 283 Ky. 283, 140 S.W.2d 1033 (1940). Equity follows the law and whenever the rights of the parties are clearly governed by the rules of law, the courts of equity will follow such rules. *Kaufman v. Kaufman's Adm'r*, 292 Ky. 351, 166 S.W.2d 860 (1942). If Bloomfield became involved in this transfer without first consulting the published administrative regulations it was clearly not vigilant and not entitled to the kind of equitable relief provided herein.

The possible expectations of the parties that the Board would continue to ignore its own published regulation are not entitled to the protection of the law. The reliance on internal policy rather than promulgated regulation clearly promotes a loss of confidence in administrative agencies and in the government in general. It engenders a disregard for all legal regulations. Those who rely on the written and promulgated regulations and laws are placed at a serious disadvantage under such a system. There is no guarantee of a consistent or uniform treatment for all citizens if agencies of the law are permitted to go beyond their own written and promulgated policies. Here the ABC Board has clearly disregarded its own regulations and the courts have found there is no remedy to the situation

other than to let all the improper activities of the Board in the past to be permitted. The mere fact that the movants may gain by enforcement of the law is not a sufficient reason to ignore the disregard of the regulation. This could not be a nation of laws if enforcement could only be sought by those unaffected by a violation. It is impossible to understand how many wrongs make a right.

The decision of the courts in this matter is not absolutely necessary under the circumstances. The practice of the Board in ignoring the dormancy regulations has the effect of conferring a valuable economic right on the owners of the dormant licenses who are not legally entitled to such a benefit. If any injustice or hardship would result, it would appear that the Board has the legal authority to amend or repeal its own regulations. It has the power to increase the quota of licenses allotted to each county. Clearly it is within the authority of the agency to avoid the harsh consequences which have the potential of arising if the decision of the Board was reversed.

There is already enough mystery about Kentucky administrative regulations and there is no need to encourage it further.

STEPHENS, J., joins in this dissent.