Lawrence PATE, Appellant

v.

DEPARTMENT OF CORRECTIONS, Appellee.

and

Lawrence Pate, Appellant

v.

Commonwealth of Kentucky, Appellee

2013–SC–000558–DG
2013–SC–000559–DG

Supreme Court of Kentucky.

RENDERED: AUGUST 20, 2015

Counsel for Appellant: Margaret Anne Ivie, Assistant Public Advocate

Counsel for Appellees: Brenn Oliver Combs, Kentucky Department of Corrections, Angela Turner Dunham, Justice and Public Safety Cabinet, Jack Conway, Attorney General of Kentucky, Kenneth Wayne Riggs, Assistant Attorney General

## OPINION OF THE COURT BY
## JUSTICE CUNNINGHAM

In April of 2003, Appellant, Lawrence E. Pate, was indicted by a Bracken Circuit Court Grand Jury on the charge of manufacturing methamphetamine, second offense, which is a Class A felony. Appellant committed the offense in October of 2002, while awaiting final sentencing for manufacturing methamphetamine in Pendleton County. Prior to trial, the Commonwealth presented Appellant with two separate plea deals. Both offers would have amended the charge of manufacturing methamphetamine, second offense, down to criminal attempt to manufacture methamphetamine, first offense. In addition, the Commonwealth agreed to recommend a sentence of five years imprisonment to run consecutively to the twenty year sentence Appellant received in the Pendleton County case. Appellant's counsel advised him to reject both plea offers and risk going to trial, as he believed Appellant would likely receive a concurrent sentence. Accordingly, Appellant proceeded to trial in 2005 and was found guilty of manufacturing methamphetamine, second offense.

Kentucky State Police Detective Chuck Rectin testified during the Truth–in–Sentencing stage of the trial. Detective Rectin advised the jury that Appellant committed a "non-violent" offense. As such, Appellant would become eligible for parole after serving twenty percent of his sentence, or eight years if sentenced to forty years or more. 501 Kentucky Administrative Regulations 1:030 § 3(1)(c) ("KAR"). Detective Rectin also informed the jury that Appellant's sentence could be reduced through good time credits, in addition to other meritorious credits. The jury ultimately recommended the minimum sentence of twenty years in prison.

Prior to the trial court ruling on Appellant's final sentence, the Commonwealth's attorney and Appellant's counsel both informed the trial court that they believed Appellant, as a non-violent offender, would become eligible for parole after serving only four years of the recommended twenty-year sentence. Appellant's counsel further urged the trial court to allow Appellant to serve his sentence concurrently with the Pendleton County sentence. The trial court ultimately sentenced Appellant to twenty years imprisonment. However, the trial court stated that it was required by KRS 533.060(3) to order Appellant's twenty year sentence to run consecutively to his Pendleton County sentence, for a

total of forty-years imprisonment. This Court subsequently upheld Appellant's conviction and sentence in 2007. *See Pate v. Commonwealth*, 243 S.W.3d 327 (Ky. 2007).

When Appellant began serving his sentence, the Department of Corrections ("DOC") classified him as a non-violent offender. Over four years after he was sentenced, the DOC notified Appellant that his non-violent offender status had been changed to violent offender. Due to Appellant's reclassification, his parole eligibility and sentence expiration dates were recalculated. As a violent offender, Appellant cannot be released on parole until he serves at least twenty years of his forty-year sentence.[1] *See* KRS 439.3401(3); 501 KAR 1:030 § 3(1)(e) (To become eligible for parole, a violent offender must serve eighty-five percent of the sentence received or twenty years, whichever is less). Moreover, now that Appellant is classified as a violent offender, he may not obtain non-educational, good time credit as provided for in KRS 197.045(1)(b)(1), nor may he receive sentencing credit if "the credit reduces the term of imprisonment to less than eighty-five percent (85%) of the sentence." KRS 439.3401(4). In light of these harsh sentencing restrictions, Appellant requested that the DOC reinstate his non-violent offender classification. The DOC explained that it had modified Appellant's status due to its changed interpretation of the "violent offender" statutory definition.

█ The DOC, as an administrative agency, is tasked with interpreting statutes and regulations that it is charged with implementing. *See Bd. of Trs. of the Judicial Form Ret. Sys. v. Att'y Gen. of the Commonwealth*, 132 S.W.3d 770, 786–87 (Ky.2003). One of those statutes is KRS 439.3401, which this Court often refers to as the Violent Offender Statute.

Prior to 2006, the DOC interpreted the statute's "violent offender" definition to include those prisoners who were serving time for the commission of a Class A felony only if the crime was one "involving the death of the victim or serious physical injury to a victim." *See* KRS 439.3401(1), *amended by* KRS 439.3401(1)(a)-(i)(2006). Under this definition, the DOC did not regard Appellant as a violent offender because there was not an identifiable victim to Appellant's crime. However, as will be discussed further, the General Assembly amended KRS 439.3401(1) in 2006 to clarify that the violent offender classification should be given to all Class A felony offenders, regardless of whether the victim suffered death or serious physical injury. Based on this amendment, the DOC changed its interpretation of the violent offender statute and classified all prisoners convicted of committing Class A felonies as violent offenders.

After Appellant exhausted all administrative remedies, he filed a declaration of rights petition in the Franklin Circuit Court. As grounds for his petition, Appellant argued that the 2006 amendment to KRS 439.3401 constituted an *ex post facto* violation. The Franklin Circuit Court dismissed Appellant's petition at the DOC's request. Appellant subsequently appealed the order of dismissal. *See Pate v. Ky. Dep't of Corr.*, 2009–CA–000734. In addi-

---

1. Despite Appellant receiving twenty years to serve for his Bracken County conviction, the Court will refer to Appellant's sentence as forty years imprisonment pursuant to KRS 197.045(3): As the statute mandates, "[w]hen two (2) or more consecutive sentences are to be served, the several sentences shall be merged and served in the aggregate for the purposes of the sentencing credit computation or in computing dates of expiration of sentence."

tion, Appellant filed a motion for clarification of his sentence in the Bracken Circuit Court. In support of his motion, Appellant alerted the trial court that the DOC had impermissibly increased his prison time by reclassifying him as a violent offender. The Bracken Circuit Court denied. Appellant's motion, after which he appealed. *See Pate v. Commonwealth*, 2009–CA–002110. Lastly, Appellant moved the Bracken Circuit Court to vacate, set aside, or correct his judgment of conviction and sentence pursuant to Kentucky Rules of Criminal Procedure ("RCr") 11.42, or, in the alternative, Kentucky Rules of Civil Procedure ("CR") 60.02. Appellant asserted numerous arguments in his motion to support his claims of ineffective assistance of counsel, all of which the Bracken Circuit Court denied without the benefit of a hearing. In regards to CR 60.02, Appellant claimed that he was entitled to extraordinary relief because he proceeded with a jury trial under the false belief that he would be considered a non-violent offender. The Bracken Circuit Court was not persuaded by Appellant's argument and denied relief. Like the other adverse rulings, Appellant sought appeal of his RCr 11.42/CR 60.02 motion in the Court of Appeals. *See Pate v. Commonwealth*, 2009–CA–000465.

The Court of Appeals consolidated all three appeals and rendered its opinion in July of 2013. As to Appellant's petition for declaration of rights, the Court of Appeals affirmed the Franklin Circuit Court's dismissal. The Court of Appeals provided a short analysis, comprised of the following sentence: "[A] statute imposing a condition that must be met before a prisoner may be eligible for parole is not an *Ex Post Facto* law because prisoners do not have a right to be paroled and because the Parole Board is not required to release a prisoner prior to the completion of his maximum sentence." In addition, the Court of Appeals affirmed the Bracken Circuit Court's order denying Appellant's motion for sentence clarification. In doing so, the Court of Appeals explained that RCr 10.10 only allows for a trial court to correct a judgment when there is a clerical mistake. The Court of Appeals further affirmed the Bracken Circuit Court's denial of Appellant's CR 60.02 motion because it believed that relief was procedurally barred.

Lastly, the Court of Appeals agreed with the majority of the Bracken Circuit Court's order denying Appellant's RCr 11.42 motion. Yet, the Court of Appeals did find merit in Appellant's ineffective assistance of counsel claim that was based on trial counsel's erroneous belief that Appellant's sentences could be served concurrently. The Court of Appeals believed that Appellant would have likely accepted the Commonwealth's plea offers had he been correctly advised that any sentence received would run consecutively to his Pendleton County sentence. As a result, the Court of Appeals reversed the trial court's order denying Appellant's RCr 11.42 motion, and remanded the case back to the Bracken Circuit Court with directions for it to hold an evidentiary hearing.

Appellant subsequently filed with this Court a motion for discretionary review, which we granted. Appellant does not appeal the Court of Appeals' affirmance of the Bracken Circuit Court's order denying his motion for sentence clarification, nor does he provide arguments in support of the ineffective assistance of counsel claims which the Court of Appeals denied. Moreover, the Commonwealth did not cross-appeal the Court of Appeals' order remanding the case to the Bracken Circuit Court for an RCr 11.42 hearing. Our review, consequently, is limited to (1) whether the Franklin Circuit Court and the

Court of Appeals erred in ruling that KRS 439.3401 does not constitute an *ex post facto* law; and (2) whether the Bracken Circuit Court and Court of Appeals erred in denying Appellant relief pursuant to CR 60.02.

We hold in the affirmative as to the second issue.

### The Violent Offender Statute—KRS 439.3401

Prior to conducting our review, we must examine the pertinent amendment the General Assembly made to KRS 439.3401(1). The Violent Offender Statute was enacted in 1986. From 2002—the year in which Appellant committed his second offense of manufacturing methamphetamine—until 2005, the year Appellant stood trial, KRS 439.3401(1) read as follows:

> As used in this section, "violent offender" means any person who has been convicted of or pled guilty to the commission of a capital offense, Class A felony, or Class B felony involving the death of the victim or serious physical injury to a victim. . . .

This version of KRS 439.3401(1) supplies the Court with two reasonable and drastically different interpretations regarding which crimes qualify as violent offenses. One way to interpret the statute is to require the victim to have suffered death or serious physical injury, only as to Class B felonies. Under this interpretation, a violent offender is any person who committed a capital offense or a Class A felony, regardless of any injury to the victim. The other logical reading of the statute is to apply the qualifier to all three classes of offenses. Per this interpretation, a violent offender can include any person convicted of a capital offense, Class A felony, or Class B felony, so long as the victim of the crime suffered death or serious physical injury. As the record indicates, this is the interpretation that Detective Rectin, Appellant's trial counsel, and the Commonwealth's attorney applied. It is also the interpretation the DOC used for approximately the first four years of Appellant's incarceration.

In 2006, the General Assembly amended KRS 439.3401(1) to make clear that a violent offender is an offender that commits any Class A felony, despite the consequences the victim suffers. The amended version of KRS 439.3401(1) defines "violent offender" as follows:

> (1) As used in this section, "violent offender" means any person who has been convicted of or pled guilty to the commission of:
>
> (a) A capital offense;
>
> (b) *A Class A felony;*
>
> (c) A Class B felony involving the death of the victim or serious physical injury to a victim;

(Emphasis added). As stated, this particular amendment induced the DOC to reclassify Appellant as a violent offender.

### Ex Post Facto Law

 This Court will first address Appellant's argument that his reclassification as a violent offender, pursuant to the 2006 amended version of KRS 439.3401(1), violates his constitutional right to be free from the application of an *ex post facto* law. *See* U.S. Const. art I, § 10, cl. 1, § 9, cl. 3, Ky. Const. § 19(1). The prohibition against *ex post facto* laws was designed "to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver v. Graham*, 450 U.S. 24, 28–29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). In determining whether a statute violates the *ex post facto* prohibition, we must consider whether the law "imposes a

punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Id.* at 28, 101 S.Ct. 960 (quoting *Cummings v. Mo.*, 4 Wall. 277, 325–326, 18 L.Ed. 356 (1867)). Thusly, our analysis is two-fold. We must not only determine if the 2006 amendment to KRS 439.3401 is "retrospective," but we must also decide whether the statute imposes upon Appellant an "increased punishment." *See Martin v. Chandler*, 122 S.W.3d 540, 547 (Ky.2003) (citing *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n. 3, 115 S.Ct. 1597, 131 L.Ed.2d 588, (1995)).

The Franklin Circuit Court disposed of this issue without conducting a hearing or a significant analysis. The court simply designated Appellant's claim as "unmeritorious without the need for detailed discussion," after which it stated that Appellant "should have known the legal consequences of his acts." The Court of Appeals' analysis went a little further, but ended its discussion on that issue due to Appellant's inability to surmount the "increased punishment" requirement. The Court of Appeals' holding was based on its prior ruling that a statute imposing a condition precedent to the completion of one's sentence cannot be regarded as extending that sentence. *See Garland v. Commonwealth*, 997 S.W.2d 487 (Ky.App.1999).

### Increased Sentence

There is no doubt that Appellant has been negatively affected by his reclassification as a violent offender. However, whether his actual sentence has been lengthened is debatable. As noted, prior to being classified a violent offender, Appellant was eligible for parole after serving eight years of his sentence. *See* 501 KAR 1:030 § 3(*1*)(c). Yet as a violent offender, Appellant must serve twenty years in prison before becoming parole eligible. *See*

KRS 439.3401(3); 501 KAR 1:030 § 3(*1*)(e). While the twelve-year increase in time Appellant must serve before becoming eligible for parole is significant, we agree with the Court of Appeals that it does not necessarily elongate Appellant's sentence. *Cf. Purvis v. Commonwealth*, 14 S.W.3d 21, 23 (Ky.2000) (holding that an increase in the length of post-release conditional discharge impermissibly increased the offender's total punishment). As the Court of Appeals opined in *Garland*, Appellant does not have a right to parole, nor is parole guaranteed. 997 S.W.2d at 490. Thusly, we concur with the Court of Appeals that increasing the time one must serve prior to becoming parole eligible does not have a "very real and direct effect on the actual time the prisoner remains behind bars...." *Hyatt v. Commonwealth*, 72 S.W.3d 566, 571 (Ky.2002).

In addition to affecting Appellant's parole eligibility, KRS 439.3401 also prohibits him from obtaining certain good time credits or other credits that reduce the term of imprisonment to less than eighty-five percent of the sentence. *See* KRS 439.3401(4). By his calculation, Appellant's violent offender status has increased his minimum "serve out date" by at least ten percent. As a result, the amount of time Appellant must spend behind bars is lengthened by the loss of sentence reducing credits. *See Weaver*, 450 U.S. at 33, 101 S.Ct. 960 (holding that a retrospective reduction in gain time credits constituted an *ex post facto* law because it lengthened the period that a prisoner must spend in prison).

### Retrospective Application

Our analysis now turns to the other *ex post facto* requirement—whether the pertinent 2006 amendment to KRS 439.3401 is retrospective. A law is retrospective if it "changes the legal conse-

quences of acts completed before its effective date." *Weaver*, 450 U.S. at 31, 101 S.Ct. 960. Appellant argues that KRS 439.3401(1) is retrospective because the 2006 amendment reclassified him as a violent offender, whereas he was not considered to be one when he committed the criminal act of manufacturing methamphetamine in 2002. The DOC, on the other hand, claims that KRS 439.3401(1) has always classified all Class A felonies as violent offenses, including Appellant's crime in 2002. The DOC maintains the 2006 amendment to subsection (1) did not substantively alter the violent offender definition; rather, the amendment was merely a textual modification to clarify its applicability. Our inquiry, therefore, is to determine if the pre–2006 version of KRS 439.3401(1) rendered Appellant a non-violent offender. If so, then the 2006 amendment reclassifying Appellant as a violent offender was retrospectively applied and in violation of the constitutional bar against *ex post facto* laws.

 When faced with issues of statutory interpretation we "must interpret the statute according to the plain meaning of the act and in accordance with the legislative intent." *Commonwealth v. Plowman*, 86 S.W.3d 47, 49 (Ky.2002) (citing *Commonwealth v. Montaque*, 23 S.W.3d 629 (Ky.2000)). "The most logical and effective manner by which to determine the intent of the legislature is simply to analyze the plain meaning of the statutory language: '[r]esort must be had first to the words, which are decisive if they are clear.'" *Stephenson v. Woodward*, 182 S.W.3d 162, 169–70 (Ky.2005) (quoting *Gateway Constr. Co. v. Wallbaum*, 356 S.W.2d 247, 249 (Ky.1962)). With these standards in mind, we turn our attention to the 2002 version of KRS 439.3401, which read as follows:

(1) As used in this section, Violent offender' means any person who has been convicted of or pled guilty to the commission of a capital offense, Class A felony, or Class B felony involving the death of the victim or serious physical injury to a victim or rape in the first degree or sodomy in the first degree of the victim, burglary in the first degree accompanied by the commission or attempted commission of a felony sexual offense in KRS Chapter 510, burglary in the first degree accompanied by the commission or attempted commission of an assault described in KRS 508.010, 508.020, 508.032, or 508.060, burglary in the first degree accompanied by commission or attempted commission of kidnapping as prohibited by KRS 509.040, or robbery in the first degree....

The statute's wording is clear in that it bestowed the categorization of violent offender to those criminals who committed certain felony offenses. KRS 439.3401 enumerated general offenses followed by more specific offenses, which if committed, rendered the criminal a violent offender. The general offenses—capital offenses, Class A felonies, and Class B felonies—are placed together in the same sentence separated by commas, while the more specific offenses are listed after the qualifying phrase "involving the death of the victim or serious physical injury to a victim." Accordingly, we are left to speculate as to whether the qualifying phrase applied to all three general offenses, or just to the offense that directly precedes it.

In viewing KRS 439.3401 in its entirety, this Court believes that the General Assembly had the intent of categorizing all Glass A felonies as violent offenses, not just those wherein the victim suffered death or serious physical injury. There is no requirement that the Class A crime have a victim who suffers death or serious

physical injury. Only the Class B felonies require it. Those Class B felonies include first-degree rape, first-degree sodomy, first-degree robbery, and first-degree burglary when accompanied by a felony sexual offense, assault, or kidnapping.

Notably, the General Assembly did not include even one Class A felony offense to this list of exceptions; and for good reason, as it intended on classifying all Class A felonies as violent offenses. To hold otherwise would be nonsensical. Take for example, the crime of first-degree arson. The crime is a Class A felony pursuant to KRS 513.020(2). The elements of the crime do not necessarily involve injury to the victim. An offender may be convicted of first-degree arson, for example, if the offender starts fire to an apartment building with the intent of damaging the building, while also believing that the building is inhabited. Of course if no one is in the building when the fire occurs, then there would be no physical injury to the victims of the crime. If we were to interpret the statute as Appellant suggests, then this Class A felony would not be considered a violent offense because the victims did not suffer death or serious physical injury.

Our interpretation that all Class A felonies are violent offenses is not novel. Both this Court and the Court of Appeals have previously ascribed to the belief that "the violent offender statute ... has applied to *all Class A felonies since its inception.*" *Commonwealth v. Pridham,* 394 S.W.3d 867, 879 n. 8 (Ky.2012) (emphasis added); *see also, Fambrough v. Dep't of Corr.,* 184 S.W.3d 561 (Ky.App.2006) ("The statute ... applies to all convictions for any capital offense, for any Class A felony ... regardless whether the victim suffered death or serious physical injury."). Moreover, our interpretation is substantiated by the 2006 amendment to the Violent Offender Statute, which now makes clear that the

General Assembly intended on excluding Class A felonies from the requirement that the victim suffer death or serious physical injury. Consequently, we agree with the DOC that the 2006 amendment to KRS 439.3401(1) was textual in nature and did not change the violent offender definition. This Court, therefore, cannot hold that KRS 439.3401 is an *ex post facto* law, as there was no substantive change for the DOC to apply retrospectively.

### Contemporaneous Construction

 In support of Appellant's attempt to bind the DOC to its initial determination that he was a non-violent offender, Appellant requests that the Court invoke the doctrine of contemporaneous construction. Similar to the reasoning used to prohibit *ex post facto* laws, the contemporaneous construction doctrine prohibits an administrative agency, like the DOC, from revoking its long-held interpretation of a statute, while applying its new interpretation retrospectively. *See Hagan v. Farris,* 807 S.W.2d 488 (Ky.1991); *Revenue Cabinet v. Lazarus, Inc.,* 49 S.W.3d 172, 174 (Ky.2001) ("The doctrine of contemporaneous construction means that where an administrative agency has the responsibility of interpreting a statute ... [it] is restricted to any longstanding construction of the provisions of the statute it has made previously.").

Appellant claims that the DOC has long interpreted KRS 439.3401(1) to only apply to Class A felonies where the victim of the crime suffered death or serious physical injury. To corroborate his claim, Appellant provided the Court with an affidavit from Jonathan Hall, the Branch Manager of the DOC Offender Information Services. Mr. Hall stated the following:

Upon reviewing the change in the textual format of KRS 439.3401(1) effective July 12, 2006 in comparison to all previ-

ous versions it became apparent that KRS 439.3401(1) has always defined a violent offender as any person convicted of ... *any* Class A felony.... Following our discovery that our previous interpretation of KRS 439.3401(1) was incorrect any offender standing convicted of a ... Class A felony That (sic) was not previously considered a violent offender had their sentence recalculated pursuant to KRS 439.3401.

Mr. Hall's affidavit proves that, at the very least, he believes his office interpreted the statute incorrectly until 2006. However, the record indicates that the DOC as a whole did not interpret the statute in the same manner. If there were contradicting interpretations, then this Court cannot conclude that the DOC held a long standing interpretation of the statute. *Cf. Hagan,* 807 S.W.2d at 490 (The transfer of a liquor license was upheld because the transferor strongly relied, to his detriment, on the ABC Board's *decades-old, consistent interpretation* of its own regulation.). For example, Melissa Harrod, Administrator of Offender Information Services, stated in her affidavit that the DOC Central Office had always instructed its employees to calculate all Class A felonies as violent offenses. Moreover, in the DOC's motion to dismiss Appellant's petition for declaration of rights, the DOC explained that it has long regarded Class A felons as violent offenders.

▮▮▮▮ Based on the aforementioned mixed interpretations, it is fair to assume that some DOC departments interpreted the statute correctly, while others did not. As our predecessor Court explained in *Delta Air Lines, Inc. v. Revenue Cabinet,* "[t]he failure of a public officer to correctly administer the law does not prevent a more diligent and efficient public administrator to [properly apply the law]." 689

S.W.2d 14, 20 (Ky.1985) (citations omitted). Indeed, "contemporaneous construction can[not] be based upon an administrative agency's mistakes." *Lazarus,* 49 S.W.3d at 175–76. Therefore, we will not utilize the doctrine of contemporaneous construction to bind the DOC to Mr. Hall's erroneous classification of Appellant as a nonviolent offender. To hold otherwise would allow portions of an administrative body to amend a statute without the force of legislative action. *See Ky. Bd. Of Tax Appeals v. Citizens Fidelity Bank & Trust Co.,* 525 S.W.2d 68, 75 (Ky.Ct.App.1975) ("[W]e are no more disposed to hold that an administrative body can change a law by mistake than to hold that it can do so on purpose.").

### *CR 60.02*

▮▮▮▮ Appellant's final argument is that the Bracken Circuit Court abused its discretion in denying his motion to vacate the judgment of conviction pursuant to CR 60.02. For the following reasons, Appellant maintains that equitable relief is required:

All the parties involved in the trial of [Appellant] appeared to be either unaware of the correct interpretation of KRS 439.3401(1) or unwilling to challenge it, evidenced by the rejection of plea offers and the acquiescence of the presentation of false testimony regarding penalty at trial.... [A]ll parties assumed [Appellant] would receive twenty (20) years, with twenty percent (20%) parole eligibility, and the opportunity to earn sentence reducing credits when his judgment was entered.... It is patently unfair to "walk" a defendant through pre-trial and trial advising him incorrectly as to the potential punishment upon conviction, and then after the judgment is entered against him, learn that everyone involved was mistaken.

CR 60.02(f) states that "[a] court may, upon such terms as are just, relieve a party or his legal representative from its final judgment [for] . . . (f) any other reason of an extraordinary nature justifying relief." Relief given pursuant to CR 60.02(f) is rarely provided because it is truly extraordinary. *Brown v. Commonwealth*, 932 S.W.2d 359, 362 (Ky.1996). CR 60.02(f) is the codification of the ancient *coram nobis* writ, which justifies relief when the "[enforcement of] the judgment as rendered would be an absolute denial of justice and analogous to the taking of life or property without due process of law." *Id.* at 361–62 (citing *Jones v. Commonwealth*, 269 Ky. 779, 108 S.W.2d 816, 817 (1937)). Based on this legal principle, Appellant argues that he was denied due process of law when he proceeded with a jury trial under the false pretense that, if convicted, he would be treated as an ordinary, non-violent offender.

Although the facts of this case are highly unique, and despite the lack of analogous case law, this Court readily concludes that extraordinary and compelling reasons exist requiring us to grant Appellant equitable relief. It is axiomatic that the concept of due process requires us "to observe that fundamental fairness [is] essential to the very concept of justice." *Lisenba v. Cal.*, 314 U.S. 219, 236, 62 S.Ct. 280, 86 L.Ed. 166 (1941). In evaluating the fairness of the judicial process Appellant received, we must entertain "the probability that the conviction would not have resulted if the truth had been revealed." *Anderson v. Buchanan*, 292 Ky. 810, 168 S.W.2d 48, 54 (1943). Throughout Appellant's entire prosecution, he was never informed that a conviction of manufacturing methamphetamine, second offense, would result in him being classified a violent offender. Instead, Appellant was told that the customary sentencing guidelines found in 501 KAR 1:030 § 3(1)(c) applied. This misinformation was provided to Appellant by his trial counsel and confirmed by the actions of not only the trial court, but also the Commonwealth's attorney and an officer of the law. Consequently, Appellant was under the impression that if convicted, he could obtain sentence reducing credits and become parole eligible after serving only twenty percent of the sentence imposed. With this mistaken belief in mind, Appellant rejected the Commonwealth's plea deals and stood trial. The Court has no doubt that Appellant would have sought conviction of a lesser crime had he been rightfully informed of the violent offender status that manufacturing methamphetamine, second offense, carries. To bind Appellant to a sentence that carries such harsh terms, those of which he was unaware would apply, places the overall integrity of the judicial system in question. *See Anderson*, 168 S.W.2d at 54.

In light of the DOC's inconsistent interpretation of KRS 439.3401(1), it is likely that Appellant is not the only prisoner to have been convicted under the erroneous belief that he or she would be classified as a non-violent offender. However, what renders Appellant's situation particularly unjust is that the Commonwealth offered him the opportunity to plead guilty to criminal attempt to manufacture methamphetamine, first offense—a non-violent, Class C felony. Had he accepted the plea offer, Appellant would have been sentenced to five-years imprisonment, to run consecutively with his Pendleton County sentence, for a total of twenty-five years in prison. In addition, Appellant would become parole eligible after serving twenty percent of the sentence. It is a clear violation of the fundamental concepts of fair play and justice to now require Appellant to serve forty years in prison, without the chance of parole for twenty years, in addition to the forfeiture of certain good

time credits. *See* 501 KAR 1:030 § 3(*1*)(e); *see also, Commonwealth v. Spaulding*, 991 S.W.2d 651, 657 (Ky.1999) (explaining that a criminal conviction obtained through wrongful information can be a reason of an extraordinary nature justifying relief pursuant to CR 60.02(f)). Accordingly, we find that the trial court abused its discretion in denying Appellant's motion, as a substantial miscarriage of justice will certainly result if we allow the final judgment to stand. For these reasons, the Court holds that Appellant is entitled to extraordinary relief pursuant to CR 60.02(f), thereby requiring the Bracken Circuit Court to vacate its judgment and sentence upon remand, subject to retrial on the charge.

There was a motion brought in this case below under RCr 11.42 which is not before us. While the facts of this case may be unique, it is quite likely that there are several other defendants sentenced at the time of the previous Violent Offender Statute, under the impression that the Class A felony classification required injury to person. This is the first time that this Court has given our attention to the interpretation of KRS 439.3401 prior to the 2006 amendment. We have held that the change does not constitute an *ex post facto* law which would formally nullify the change in the classification of Appellant. However, a spate of litigation may await the DOC and the courts, unless the DOC applies the more lenient interpretation to those prisoners affected by its reclassification—that applies to those defendants sentenced before the clarifying change to KRS 439.3401(1).

### Conclusion

In summary, the Court concludes that the 2006 amendment to KRS 439.3401 does not constitute an *ex post facto* law, nor does it invoke the doctrine of contemporaneous construction. For that reason, the Court hereby upholds the Court of Appeals' opinion affirming the Franklin Circuit Court's dismissal of Appellant's Petition for Declaration of Rights. Additionally, for reasons aforementioned, the Court concludes that Appellant is entitled to relief pursuant to CR 60.02(f). Therefore, the Court of Appeals' opinion affirming in part and reversing in part the Bracken Circuit Court's dismissal of Appellant's motion for relief pursuant to RCr 11.42, or in the alternative, CR 60.02, is hereby reversed and remanded back to the trial court with instructions for it to vacate Appellant's judgment of conviction and sentence. Since Appellant's conviction and sentence are to be vacated, the Bracken Circuit Court is no longer required to conduct an RCr 11.42 hearing as ordered by the Court of Appeals. Furthermore, Appellant's procedural posture shall revert back to the point in time prior to the Commonwealth's initial plea offer. Appellant is on notice that the crime to which he is charged, manufacturing methamphetamine, second offense, is a Class A felony that, if ultimately convicted of, will require the DOC to categorize him as a violent offender within the meaning of KRS 439.3401.

All sitting. All concur.