Ronald L. PINCHBACK, Sr., et al.,
Appellants,

v.

Robert F. STEPHENS et al., Appellees.

Court of Appeals of Kentucky.

Aug. 25, 1972.

Weldon Shouse, Lexington, for appellants.

E. Lawson King, Fayette County Atty., A. Gene Oliver, Asst. County Atty., Lexington, W. Michael Goldie and Charles W. Arnold, Asst. Corporation Counsels, Lexington, for appellees.

CULLEN, Commissioner.

Two representative citizens and taxpayers, one a resident of the City of Lexington and the other a resident of Fayette County outside of Lexington, brought suit against the city and its board of commissioners, and against the fiscal court of the county, seeking a declaration of unconstitutionality of KRS 67A.010 to 67A.040, which authorizes a merger of city and county governments, in any county other than one containing a city of the first class, into an "urban county form of government." The circuit court held the statute valid, and the plaintiffs have appealed.

The statute as enacted originally in 1970 (1970 Acts, Ch. 268) applied only to counties containing a city of the second class. By Chapter 28 of the Acts of 1972 it was amended to extend its application to all counties except one containing a city of the first class, and by Chapter 257 of the Acts of 1972 some of the details of the statute were changed. In present form the statute reads as follows:

"67A.010. In order to facilitate the operation of local government, to prevent duplication of services, and to promote efficient and economical management of the affairs of local government, the voters in any county except a county containing a city of the first class may merge all units of city and county government into an urban county form of government. Such merger shall take place only

after compliance with the procedures set forth in KRS 67A.020.

"67A.020. Upon a petition filed with the county clerk and signed by a number of registered voters equal to 5 per cent of voters of the county voting in the immediate past general election, and upon additional petitions equal to the number of municipal corporations within the county, filed with the county clerk and signed by a number of registered voters equal to 5 per cent of the number of voters of each municipal corporation, voting in the immediate past general election, requesting a referendum be held on the question of adopting the urban county form of government, the fiscal court and the council of the largest city within the county shall appoint a representative commission composed of not less than twenty (20) citizens which shall devise a comprehensive plan of urban county government. The plan shall include a description of the form, structure, functions, powers and officers and their duties of the proposed urban county government; the procedures by which the original plan may be amended; and such other provisions as the commission shall determine; and shall be consistent with the provisions of the Constitution of Kentucky. This plan shall be advertised at least ninety (90) days before a general election at which the voters will be asked to approve or disapprove the adoption of the plan. The ballots shall be counted, returns made and canvassed as in other elections, and the results shall be certified by the county board of election commissioners to the county clerk. If it appears that a majority of those voting are in favor of adopting the plan, the commissioners shall enter such fact of record and shall organize the urban county government.

"67A.030. Upon the election and qualification of county officers and such other elected officials as provided in the comprehensive plan at the next regularly scheduled election at which county of-

ficers shall be elected, as provided in section 99 of the constitution, the urban county government shall immediately become the effective government. All the debts, property, franchises and rights of the existing county government and of any municipality within the county shall be assumed by the urban county government.

"67A.040. All powers and privileges possessed by the County and by the class of cities to which the largest city in the county belongs on the date the urban county government becomes the effective government shall be exercised by the urban county government."

The instant action was filed after a commission to devise a comprehensive plan of urban county government had been appointed in Fayette County pursuant to petitions filed in accordance with KRS 67A.020. No plan has as yet been submitted by that commission, so the instant action does not involve the validity of a particular plan, but only the constitutionality of the statute itself.

The precedents of the statute in question, as stated in the opinion in this case by Circuit Judge James Park, Jr., were:

"Although the urban county form of government may be a new concept in Kentucky, consolidated city-county governments have existed for years in other states. City-county consolidation has existed in such states as California, Colorado, Florida, Missouri, Montana, Louisiana, and Pennsylvania. Such cities as San Francisco, Denver, Jacksonville, Baton Rouge, Philadelphia, and St. Louis, have operated as a consolidated city and county government.

"Consolidated city-county government can best be illustrated by examining San Francisco. It is both a city and a county, although the boundaries of the two entities are coincident. San Francisco performs the functions of both a county and a city. The functions performed in a particular case determine whether San Francisco is to be viewed as a city or a county. Although chosen by the same body of voters, the functions of its officers are determined by the source of their authority, that is, whether they are acting in a particular case as a city official or as a county official. This is true even in cases in which the official performs both county and city functions. Kahn v. Sutro, 114 Cal. 316, 46 P. 87, 33 L.R.A. 620; Madison v. City and County of San Francisco, 106 Cal.App.2d 232, 234 P.2d 995 [236 P.2d 141].

"In most incidences, city and county consolidated government has been authorized by some provision of the state's constitution. However, in Dortch v. Lugar, Ind., 266 N.E.2d 25 (1971), the Indiana Supreme Court upheld the Unigov Act which permitted consolidation of cities and counties in densely populated metropolitan areas. In upholding the constitutionality of this act, which applied to Indianapolis and Marion County, the Indiana Supreme Court did not rely upon any constitutional provision authorizing the consolidation of cities and counties. The Court concluded that the legislature may constitutionally provide for an urban county form of government which would exercise both the functions of a county and the functions of a city of the second class."

The appellants' first contention is that the statute violates Section 59 of the Kentucky Constitution, in confining its application to counties other than one containing a city of the first class. We think a sufficient answer to that contention is that an Act classifying counties or cities upon the basis of size alone always has been recognized as permissible under Section 59, if the subject of the Act is the organization or government of the classified governmental units. Board of Education of Jefferson County v. Board of Education of Louisville, Ky., 472 S.W.2d 496; Mannini v. McFarland, 294 Ky. 837, 172 S.W.2d 631; James v. Barry, 138 Ky., 656, 128 S. W. 1070. And even without regard to that

rule, we think the exclusion of a county containing a first-class city has a rational and reasonable basis in that in such a county the problems to be overcome in establishing an urban government necessarily are more complex by reason of the size of the population and its apportionment among the various local governmental units. As is the case with Louisville and Jefferson County, the first-class city ordinarily will be larger in population than the unincorporated territory of the county; this is not usually the case with cities of lower classes, and this distinction furnishes the justification for separate legislative treatment in the area of urban-government organization and structure.

■ The appellants' remaining argument is expressed in the form of two separate propositions; one that the statute is a delegation of legislative authority in violation of Section 60 of the Kentucky Constitution, and the other that "home-rule" or self-government cannot be granted to local political units without express constitutional authorization, which the Kentucky Constitution does not contain. We think the propositions really are one and the same: that while a local political unit or its voters may be given a broad power of determination as to the *functions* and *programs* of the unit, the basic *structure* of the unit must be defined by the state legislature. The argument concedes that the local voters may be given a choice of election between two or more structures defined by the state legislature, as was held in Bryan v. Voss, 143 Ky. 422, 136 S.W. 884, but asserts that the local voters cannot be given the power to devise a structure or charter of local government.

As stated at the outset of this opinion, this litigation does not involve any specific plan, but only the validity of the statute itself. In order to hold the statute void, we would have to be convinced that no conceivable plan offered under the statute, no matter how minor in its impact, could possibly be valid, if it affected in any way the structure of local government. We are not so convinced.

■ We do not find in the Kentucky Constitution such declarations against local self-government as to forbid unequivocally any venture at all by local voters into the area of structure of local government. It is true that Section 60 forbids the enactment of laws "to take effect upon the approval of any other authority than the General Assembly," but it expressly exempts laws for "the regulation by counties, cities, towns or other municipalities of their local affairs." It is true also that Section 156, dealing with cities, says: "The organization and powers of each class shall be defined and provided for by general laws, so that all municipal corporations of the same class shall possess the same powers and be subject to the same restrictions." We are not persuaded, however, that no plan proposed under the statute here in issue could possibly avoid violating Section 156. It further is true that Sections 97 to 108 designate various constitutional county offices and Section 144 provides for a fiscal court, but again we cannot say that any plan proposed under the statute here in issue would inevitably violate those sections.

Absent any all-inclusive, straight-out prohibition in our Constitution against the grant to local voters of any power of self-government in regard to the structure of local government, this Court is not disposed to bar the door to any and all possibility of action in this area.

It is our conclusion that the statute in question, in and of itself, is not subject to the constitutional infirmities asserted by the appellants.

The judgment is affirmed.

STEINFELD, C. J., and MILLIKEN, OSBORNE, PALMORE and REED, JJ., concur.

EDWARD P. HILL, Jr., and NEIKIRK, JJ., not sitting.