**William C. JACOBS et al., Appellants,**

v.

**LEXINGTON–FAYETTE URBAN COUNTY GOVERNMENT et al., Appellees.**

Supreme Court of Kentucky.

Nov. 18, 1977.

Rehearing Denied Jan. 31, 1978.

William C. Jacobs, Jerry Anderson, Lexington, for appellants.

Donald D. Waggener, George Rabe, Lexington, for appellees.

LUKOWSKY, Justice.

This is the third stage of the evolutional development of urban-county government in Kentucky. The first stage is represented by our decision in *Pinchback v. Stephens*, Ky., 484 S.W.2d 327 (1972), in which we held that KRS Chapter 67A was not per se unconstitutional because this court could not say that every possible action taken under it would inevitably violate the constitution. Stage two is represented by our decision in *Holsclaw v. Stephens*, Ky., 507 S.W.2d 462 (1974), in which we upheld against constitutional attack most aspects of the plan merging the City of Lexington and Fayette County into an urban-county government.

In *Holsclaw* at 481 it was noted:

". . . that some members of this court are of the opinion that urban coun-

ty government as it is constituted in Fayette County may be faced with practical problems which no one has as yet foreseen. As one example we call attention to Section 157 of the Constitution which provides that cities and towns alone may levy taxes at a rate in excess of fifty cents per one-hundred dollars' evaluation. Counties and other taxing districts are not permitted to exceed the rate of fifty cents per one-hundred dollars' evaluation. In this opinion we hold that urban county government is not a city and thus it escapes the strictures of Section 160 of the Constitution. If it is not a city can it levy taxes at a rate in excess of fifty cents per one-hundred dollars' evaluation in view of the limitations imposed by Section 157? This question was not litigated and we do not attempt here to answer it but only point it out as one of the practical difficulties which have yet to be resolved."

It is this ghost which we conjured up that is back to haunt us.

Pursuant to KRS 67A.150, Sections 2.01 and 2.02 of the merger plan of the Lexington-Fayette Urban County Government permit the Council to divide the county into three service districts and designate each district as a separate taxing district. The two basic districts are the general services district which encompasses the entire urban-county government area, i. e. all of Fayette County, and the full urban services district which is the territory previously included within the former boundaries of the now extinct City of Lexington. The third type of district provided for by the plan is the partial urban services district. At the time this action was commenced there was no such district in existence.

On November 21, 1974 the Council of the Lexington-Fayette Urban County Government passed an ordinance levying an ad valorem tax for the fiscal year beginning July 1, 1974 and ending June 30, 1975 on all assessed and assessable property, real, personal and mixed, tangible and intangible, of every kind and description (with minor exception), located within its boundaries. The

tax rate throughout the general services district was $.1465 per one hundred dollars' of assessed valuation. The additional rate throughout the full urban services district was $.617 per one hundred dollars of assessed valuation.

In October the Mayor acting with the approval of the Council on behalf of the urban-county government executed a contract with the Sheriff of Fayette County providing for the Sheriff to collect the taxes levied in the full urban services district for a commission of 1.3% of the amount collected.

Six days after the passage of the tax ordinance Jacobs commenced this class action demanding that the full urban services district tax be declared unconstitutional, that the contract between the urban-county government and the Sheriff be declared void and that the collection of the tax be enjoined. The case was submitted to the trial court on a stipulated statement of facts and briefs. The trial court found the tax to be constitutional and the contract to be valid. Jacobs appeals.

Jacobs attacks the tax on two grounds. The tax rate is greater than that permitted by Section 157 of the Constitution. The difference between the tax rates in the full urban services district and the general services district violates the principles of uniformity embodied in Sections 171 and 172A of the Constitution. He attacks the contract for the collection of taxes by the Sheriff on the basis that the Director of the Division of Tax Collection of the urban-county government, the person charged by law with the collection of the tax, was not a party to the contract. We discuss these issues seriatim.

### I.

Section 157 of the Constitution of Kentucky provides in part:

"The tax rate of cities, towns, counties, taxing districts and other municipalities, for other than school purposes, shall not, at any time, exceed the following rates upon the value of the taxable property therein, viz.: For all towns or cities having a population of fifteen thousand or more, one dollar and fifty cents on the hundred dollars; for all towns or cities having less than fifteen thousand and not less than ten thousand, one dollar on the hundred dollars; for all towns or cities having less than ten thousand, seventy-five cents on the hundred dollars; and for counties and taxing districts, fifty cents on the hundred dollars  .  .  ."

In *Holsclaw,* supra we held that the Lexington-Fayette Urban County Government is not a city, that the City of Lexington ceased to exist on the day on which urban-county government became effective and that Fayette County remained as a geographical subdivision governed by a new creature, urban-county government. In a nutshell, Jacobs' position is that urban-county government is not a city. Therefore, it must be either a county or a taxing district and that consequently, the fifty cents limitation is applicable.

If we were to accept this rather simplistic logic we would frustrate the intent of the legislature in adopting KRS Chapter 67A and attribute to the framers of our Constitution a rigidity of structure which we do not believe they contemplated. The general assembly has created a new form of local government possessing the combined power of a county and a city of that class of cities to which the city of the highest class in the county belonged on the day prior to merger. *Holsclaw,* supra at 470. KRS Chapter 67A is the legislative response to the increase in population and growing urbanization of this Commonwealth and the resultant needs of local government. Our Constitution is no barrier to this response. *Pinchback,* supra. We apprehend no compelling reason why we should use the Constitution like a blanket to smother the attempts of the legislature to breathe life into local government via a form of local government unforeseen at the time of the adoption of the Constitution.

Section 157 sets forth the maximum ad valorem tax rates for "cities, towns, counties, taxing districts, and other municipalities." This list was exhaustive at the time

the Constitution was adopted. Now we are faced with a new form of local government. This form is the progeny of a marriage of city and county. It is a new generation which possesses the most desirable traits of its parents. It possesses the greater powers and lesser restrictions which were previously applicable to either of its ancestors.

The tax rates prescribed in Section 157 are graduated. This scheme reflects the relative needs of local government. The greater the demand for public services on the unit of government the higher the permissible tax rate. "With continued growth and concentration of population the need for local power to provide for special services has become a need common to most of the population in some counties yet the necessity to retain a county government in addition to the municipal government has caused a needless duplication of governmental structure in many areas." *Holsclaw,* supra at 472.

The urban-county form of government was created to eliminate duplication but retain the power of local government to deal with complex needs and the growing demand for greater governmental services. To shackle this new structure, which was created to give more efficient services, with the ad valorem tax rates of a county or taxing district would defeat the purpose of its creation by reducing its sources of revenue to a level adequate only to provide the limited services of a county or special purpose taxing district. Certainly such a result is not required by either the language or spirit of Section 157. See *Dalton v. State Property and Buildings Commission,* Ky., 304 S.W.2d 342 (1957). We hold that an urban-county government is subject to the tax limitations imposed by Section 157 of the Constitution upon cities having the same population, subject to such more restrictive statutory limitations as the General Assembly may see fit to impose.

II.

■ Section 171 of the Constitution of Kentucky provides in part:

". . . Taxes shall be levied and collected for public purposes only and shall be uniform upon all property of the same class subject to taxation within the territorial limits of the authority levying the tax, . . ."

This section, together with Sections 172 and 174, requires not only a uniform rate of taxation within the territorial limits of the authority levying the tax but also an equality of taxation upon all property of the same class in proportion to its value. *Eminence Distillery Co. v. Henry County Board of Supervisors,* 178 Ky. 811, 200 S.W. 347 (1918). These principles of taxation were fundamental even before the adoption of our present Constitution and became cornerstones of our Constitution which have been jealously guarded not only as to property taxes but also as to occupational taxes. *Great Atlantic and Pacific Tea Co. v. Kentucky Tax Commission,* 278 Ky. 367, 128 S.W.2d 581 (1939).

KRS 67A.150 permits the territory of an urban-county government to be divided into service districts. It then provides that "Each service district shall constitute a separate tax district within which the urban-county government shall levy and collect taxes in accordance with the kind, type, level and character of services provided by the urban-county government in each of these districts." As previously mentioned, Sections 2.01 and 2.02 of the plan of merger so divided the territory of the Lexington-Fayette Urban County Government into two basic service districts and Council then levied a tax upon all property within each district at different rates. Insofar as KRS 67A.150 and Sections 2.01 and 2.02 of the plan mandate that these service districts are separate taxing districts they are patently offensive to Section 171. The authority levying the tax is Lexington-Fayette Urban County Government. The requirement of uniformity applies throughout the territorial limits of the authority levying the tax, i. e. the metes and bounds of Fayette County.

■ What we have said thus far is not dispositive of the question of whether there

may be different tax rates between the service districts, because in 1969 we adopted Section 172A as an amendment to our Constitution. This section provides in part:

"The General Assembly may provide for reasonable differences in the rate of ad valorem taxation within different areas of the same taxing districts on that class of property which includes the surface of the land. Those differences shall relate directly to differences between nonrevenue-producing governmental services and benefits giving land urban character which are furnished in one or several areas in contrast to other areas of the taxing district."

KRS 82.085 expressly authorizes cities of the second class, such as parent Lexington, to levy ad valorem taxes at different rates pursuant to Section 172A. These provisions legitimate the differential in rates insofar as those rates apply to real estate, other than severed mineral interests. We find nothing here to justify a differential in rates insofar as they apply to personal property and severed mineral interests. To this extent then the differential in rates is unconstitutional and void.

■ The difficult policy question to be decided is whether our ruling in regard to personal property and severed mineral interests should be given prospective or retrospective effect. We have reexamined our statement and disposition of the tax differential issue in *Holsclaw*, supra at 476 and have reached the conclusion that the language we used there was loose enough to permit a fair minded reader to infer that we approved the tax rate differential permitted by Section 172A for application to personal property and severed mineral interests as well as real property which includes the surface of the land. It is probable that Council relied on such an inference when it passed the tax ordinance. Consequently, we are persuaded to apply our ruling on this issue prospectively.

While Council did not rely on a long line of established precedents in passing its ordinance, Council did no doubt rely on the only guidance available, that which we furnished

in *Holsclaw*. In the past we have held that our decisions would apply prospectively so that we might avoid injustice or hardship. *German Gymnastic Association of Louisville v. City of Louisville*, 306 Ky. 810, 209 S.W.2d 75 (1948); *Payne v. City of Covington*, 276 Ky. 380, 123 S.W.2d 1045 (1938). To deprive Lexington-Fayette Urban County Government of a substantial portion of its tax revenues after it relied upon our less than precise pronouncement in *Holsclaw* would be unjust and constitute a hardship upon all citizens of that local government. It would cause a chaotic disruption of services. We choose, as we have a right to do, to limit the application of our ruling here to taxes based on assessments made as of January 1, 1978 and thereafter. *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). *Great Northern Railroad Co. v. Sunburst Oil and Refining Co.*, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932).

### III.

■ We give short shift to the contention that the Director of the Division of Tax Collection is an indispensible party to the contract for tax collection by the Sheriff. The urban-county government is the entity for whose benefit these taxes must be collected. Its merger plan provided that the collections were to be made by the Director. It is axiomatic that no one person could perform the work necessary to collect the taxes for a governmental unit of approximately 150,000 in population. This means that the person charged with this obligation must turn to the governmental unit itself to provide the means to do the job, either by furnishing personal staff and equipment or by contracting with an existing organization. The choice of alternatives belongs to the government, not to the Director of one of its departments. The government through its legislative body made the choice. The government effectuated the choice by the action of its chief executive. The contract is valid.

The judgment is affirmed in part and reversed in part, and the cause is remanded

to the Fayette Circuit Court for the entry of judgment in conformity herewith.

All concur.