RENDERED: JUNE 15, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

## FINAL

2015-SC-000114-DG

DATE 7/6/17 Kim Redman, DC

THE ESTATE OF CHRISTINA WITTICH (BY             APPELLANT
AND THROUGH JUDITH WITTICH AND
FREDERICK WITTICH IN THEIR DULY
APPOINTED CAPACITIES AS CO-
ADMINISTRATRIX AND CO-
ADMINISTRATOR)

ON REVIEW FROM THE COURT OF APPEALS
V.                  CASE NO. 2009-CA-002378
FAYETTE CIRCUIT COURT NO. 08-CI-04294

MICHAEL JOSEPH FLICK               APPELLEE

## OPINION OF THE COURT BY CHIEF JUSTICE MINTON

### AFFIRMING

A circuit court jury found Michael Joseph Flick liable for the wrongful

death of Christina Wittich and awarded compensatory and punitive damages to

her estate. The Court of Appeals reversed the resulting trial-court judgment

and remanded the case to the trial court to dismiss the complaint. The Court of

Appeals reasoned that the Estate's cause of action against Flick accrued no

later than the date of his indictment for Wittich's murder, and by operation of

KRS[1] 413.180, the Estate had until no later than July 18, 2007 to file its claim.

And because the Estate failed to file this within that time frame, the Court of

---

[1] Kentucky Revised Statutes.

Appeals held that the trial court erred when it denied Flick's motion to dismiss the complaint. On discretionary review, we affirm the Court of Appeals.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Flick shot and killed Wittich on May 20, 2005. He was apprehended at the scene of the crime. The grand jury indicted Flick for Wittich's murder on July 18, 2005, and he was tried and convicted of Wittich's murder in January of 2008 and sentenced to life imprisonment.

The Estate filed this wrongful-death action against Flick in August, 2008. Flick moved to dismiss the complaint as untimely filed, but the trial court denied the motion. At trial, the jury awarded the Estate $2,900,000 in compensatory damage and $53,000,000 in punitive damages.

## II. ANALYSIS.

### A. Standard of Review.

A determination of whether an action is barred by the statute of limitations is a question of law, which requires this Court to conduct a de novo review.[2]

### B. The Wrongful-Death Claim Was Untimely Filed.

It is critical to identify the important dates before us, because the proper disposition of this case turns on these dates.

- On May 20, 2005, Flick killed Wittich.

---

[2] *Cuppy v. General Acc. Fire & Life Assur. Corp.*, 378 S.W.2d 629, 631 (Ky. 1964).

2

- On July 18, 2005, the grand jury indicted Flick for Wittich's murder.

- On November 16, 2006, Wittich's parents, Judith and Fredrick Wittich, were appointed co-administrators of her estate.

- In January of 2008, Flick was tried and convicted of Wittich's murder.

- On August 22, 2008, the personal representatives of the Estate filed the complaint against Flick for the wrongful death of Wittich.

The Estate brought its wrongful-death action under Kentucky's wrongful-death statute, KRS 411.130(1).[3] We have long held that wrongful-death claims fall within the purview of the limitations period established in KRS 413.140(1)(a) and must be commenced within one year after the cause of action accrues.[4] The Court of Appeals recognized in *Gaither v. Commonwealth* that wrongful death itself is not explicitly mentioned in KRS 413.090 to KRS 413.160, but KRS 413.140 and its "predecessors have been recognized for over 100 years as establishing a one year statute of limitations period on wrongful-death claims."[5] Recognizing that longstanding precedent in Kentucky has

---

[3] KRS 411.130(1) ("Whenever the death of a person results from an injury inflicted by the negligence or wrongful act of another, damages may be recovered for the death from the person who caused it, or whose agent or servant caused it.").

[4] KRS 413.140(1)(a); *See Irwin v. Smith*, 150 Ky. 147 (1912); *Conner v. George W. Whitesides Co.*, 834 S.W.2d 652, 653 (Ky. 1992); *Gaither v. Commonwealth*, 161 S.W.3d 345, 348 (Ky. App. 2010); *Carden v. Louisville & N.R. Co.*, 101 Ky. 113, 39 S.W. 1027 (1897).

[5] *Gaither*, 161 S.W.3d at 346 (citing *Carden v. Louisville & N.R. Co.*, 101 Ky. 113, 39 S.W. 1027 (1897)).

3

established that claims for wrongful death fall within KRS 413.140(1)(a), we observed, "[d]eath is simply the final injury to the person."[6]

A wrongful-death claim is brought by the personal representative of the decedent under KRS 411.130(1).[7] Because a personal representative brings the claim on behalf of the decedent and wrongful death has been classified under KRS 413.140(1)(a), we are led to KRS 413.180, which sets out limitations for an action by or against a personal representative.[8] KRS 413.180 provides:

> (1) If a person entitled to bring any action mentioned in KRS 413.090 to 413.160 dies before the expiration of the time limited for its commencement and the cause of action survives, the action may be brought by his personal representative after the expiration of that time, if commenced within one (1) year after the qualification of the representative.
>
> (2) If a person dies before the time at which the right to bring any action mentioned in KRS 413.090 to 413.160 would have accrued to him if he had continued alive, and there is an interval of more than one (1) year between his death and the qualification of his personal representative, that representative, for purposes of this chapter, shall be deemed to have qualified on the last day of the one-year period."

In *Conner v. George W. Whitesides Co.*, we held that KRS 413.180(2) properly applies to wrongful-death claims.[9] We explained that "[i]t is reasonable to conclude the General Assembly intended for the personal representative to have the same amount of time to prosecute all claims resulting from injury to the decedent including injuries resulting in death."[10] The Court of Appeals in the present case correctly noted that under Kentucky law, a wrongful-death

---

[6] *Conner*, 834 S.W.2d at 654.

[7] KRS 411.130(1).

[8] KRS 413.180.

[9] *Conner*, 834 S.W.2d at 655.

[10] *Id.* at 654.

4

claim commences upon the appointment of a personal representative *or* no longer than two-years from the date of death.[11] The Court of Appeals recognized that Wittich's wrongful-death claim was brought more than three years after Wittich's death, and almost two years after Wittich's parents were appointed administrators of her estate.

With the timeline clearly showing the untimeliness of Wittich's wrongful-death claim, it becomes necessary to consider whether the running of time fixed by the existing statute of limitations was somehow tolled, thereby allowing this claim to be considered timely filed.

## C. Wittich's Claim is Not Saved by a Tolling Statute.

Having identified the timeframe within which the Estate was required to assert its wrongful-death claim against Flick, we arrive at the crux of this appeal: is there anything that stops the running of the statutory period? Wittich argues that the statute of limitations begins to run on the date of Flick's conviction. We do not agree.

KRS 413.190 acts as a tolling statute in certain instances for claims falling within KRS 413.090 – 413.160.[12] More specific to the case of Wittich, KRS 413.190(2) is the only argument that could reasonably be made to toll the running of the statutory period for bringing this wrongful-death claim.[13] The statute provides for tolling of the statute of limitations when a defendant "abscond[s] or conceal[s] himself or by any other indirect means obstructs the

---

[11] *Gaither*, 161 S.W.3d at 348.

[12] KRS 413.190.

[13] KRS 413.190(2).

5

prosecution of the action, the time ... [of] obstruction shall not be computed as any part of the period within which the action shall be commenced."[14] Meaning, if Wittich were able to argue successfully that Flick was absconding, concealing, or obstructing the prosecution of the Estate's claim until conviction, then the statute of limitations would be tolled until the condition has abated.

Under our established jurisprudence, a plaintiff is "under the duty to exercise reasonable care and diligence to discover whether he has a viable legal claim," and any fact that should arouse his suspicion is equivalent to "actual knowledge of his entire claim."[15] Here, Flick was apprehended immediately at the scene of the murder, arrested and charged a few days later upon his release from a local hospital, incarcerated in the local detention facility pending trial, and indicted within a matter of months. And by the date of Flick's public indictment, Wittich's estate knew or should have known of the injury to Wittich and that it was likely caused by Flick's conduct.[16] We are not at all persuaded that Flick acted in a manner that would trigger tolling the limitations period under KRS 413.190.

Flick did not abscond. He did not conceal himself or obstruct prosecution of Wittich's civil claim. We have held that concealment or obstruction generally must consist of an act or conduct that misleads or deceives the plaintiff, which

---

[14] *Id.*

[15] *Hazel v. General Motors Corp.*, 863 F.Supp. 435, 439 (W.D. Ky. 1994) (*citing Burke v. Blair*, 349 S.W.2d 836, 837 (Ky. 1961)).

[16] *Perkins v. Northeastern Log Homes*, 808 S.W.2d 809, 819 (Ky. 1991).

6

obstructs or prevents the plaintiff from instituting suit.[17] Here we find no evidence in the record to suggest that Flick took any action that would mislead or deceive the Estate. On the contrary, as the Court of Appeals discussed, with the exception of his initial denials, Flick did not deny that he killed Wittich. Instead, he defended the murder charge at trial by asserting he shot Wittich while acting under extreme emotional disturbance.

We decline the Estate's invitation to adopt a rule tolling the running of the limitations period in murder cases until conviction of the perpetrator. Some states have addressed this issue by enacting statutes providing extended statutes of limitations for a wrongful death caused by murder, but our statute does not provide such an exception.[18] As we discussed above, in Kentucky, one has a duty to act diligently in investigating and asserting any potential claims.[19] And a plaintiff should be reasonably apprised of the potential wrongful-death claim at the time the indictment is made public.

**D. The Legislature's Amending KRS 413.140(1) Does Not Save Wittich's Claim.**

Wittich argues that a recent legislative amendment made to KRS 413.140(1), adding subsection (l), amounted to a silent adoption by the General Assembly of the holding of the Court of Appeals in *DiGiuro v. Ragland* .[20]

---

[17] *See Emberton v. GMRI, Inc.,* 299 S.W.3d 565 (Ky. 2009).

[18] *See* Minnesota Statute Section 573.02(1) (1996) ("An action to recover damages for a death cause by an intentional act constituting murder may be commenced at any time after the death of a decedent."); Illinois Code Section 13-202; N.J.S.A. 2A:31.

[19] *Hazel,* 863 F.Supp. at 439 (*citing Burke* 349 S.W.2d at 837).

[20] *DiGiuro v. Ragland,* No. 2003-CA-001555-MR, 2004 WL 1416360 (Ky. App. 2004).

In *Ragland*, the trial judge dismissed a wrongful-death claim as falling outside of the statute of limitations.[21] The dismissal was appealed to the Court of Appeals, which directly addressed the issue of when the statute of limitations begins to run for a wrongful-death case in the context of a murder.[22] The *Ragland* panel held that the statute of limitations begins to run from the date of conviction.[23]

Wittch contends that the legislature was aware of that case and explicitly chose not to add wrongful death while amending another section of KRS 413.140(1)(a). This is an unconvincing argument. If the General Assembly in its wisdom chooses to move wrongful-death claims outside the one-year statute of limitations period—the place where the law has been for more than a century—we are confident that it will explicitly do so.

Wittch makes much of the fact that the Court of Appeals' opinion in *Ragland* was designated "to be published" at the time it was rendered, making the rule in *Ragland* binding authority for the trial court and the Court of Appeals in the present case. We disagree.

The procedural history that followed the Court of Appeals' decision in *Ragland* reveals the fallacy of the Estate's argument concerning the opinion's precedential value. After the Court of Appeals issued its opinion, this Court took discretionary review of the case and affirmed the decision by a split vote of

---

21 *Id.*

22 *Id.*

23 *Id.*

this Court.[24] Although affirmed, the Court of Appeals' opinion in *Ragland* remained unpublished by operation of Civil Rule 76.28(4)(a).[25] And the Court of Appeals panel in the present case correctly relied on Civil Rule 76.28(4)(c) which states, "Opinions that are not to be published shall not be cited *or used as binding precedent* in any other case in any court of this state..." and "unpublished Kentucky appellate decisions, rendered after January 1, 2003, may be cited for *consideration* by the court if there is no published opinion that would adequately address the issue before the court."[26] As an unpublished case, rendered in June of 2004, *Ragland* properly falls within the type of publication status which makes it merely persuasive authority.

## E. Our Opinion is Not Prospective Only in Nature.

Wittich cites several cases in which this Court made its holding prospective in nature. Those cases present fairly narrow circumstances that do not exist in the present case.

Wittich relies on *Hagan v. Farris* for the proposition that we have the authority to act prospectively in order to avoid injustice, especially as it applies to property rights and a party acting in reliance on the law as it existed at the time of their actions.[27] The action before us is factually dissimilar from

---

[24] SCR 1.020.

[25] CR 76.28(4)(a) ("Upon entry of an order of the Supreme Court granting a motion for discretionary review the opinion of the Court of Appeals shall not be published, unless otherwise ordered by the Supreme Court.").

[26] CR 76.28(4)(c).

[27] *See Hagan v. Farris*, 807 S.W.2d 488, 490 (Ky. 1991).

9

*Hagan.*[28] In *Hagan,* an owner of a liquor license relied on a state agency's interpretation of its own regulation, which the agency had applied for "decades" previously.[29] This Court, coming to the conclusion that the agency was misapplying its own regulation, agreed with the Court of Appeals. Coming to the conclusion that the decision should act prospectively, we reasoned that because the agency had been applying the rule in a consistent manner for many years, it would have been nearly impossible for a party to conceive that the agency interpretation was incorrect.[30]

Wittich cannot assert such a strong position as argued in *Hagan.* If Wittich were indeed relying on the Court of Appeals' holding in *Ragland,* it did so at its own peril. As discussed above, our decision as to the statute of limitations affirmed the Court of Appeals decision by operation of rule.[31] And once again, while we affirmed the Court of Appeals decision, the opinion itself remained unpublished by operation of Civil Rule 76.28(4(a).[32] And when that decision was applied later on remand, the Court of Appeals panel accepted the statute-of-limitations issue as the law of the case and did not address it.[33] These facts, unlike *Hagan,* are of such a nature that do not persuade us to apply our holding prospectively.

---

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] SCR 1.020.

[32] CR 76.28(4)(a) ("Upon entry of an order of the Supreme Court granting a motion for discretionary review the opinion of the Court of Appeals shall not be published, unless otherwise ordered by the Supreme Court.").

[33] *Ragland v. DiGiuro,* 352 S.W.3d 908, 916 (Ky. App. 2010).

Wittich also cites *Jacobs v. Lexington-Fayette Urban County Government*, extracting a quote indicating that loose language in our decisions may create a situation where a contradictory decision later may allow the ruling to act prospectively.[34] But, once again, the case Wittich cites to us is factually distinct. In *Jacobs*, the party was relying on a published decision that the *Jacobs* court believed was "loose enough to permit a fair minded reader to infer that we approved of [a certain position]" that was later the basis of the legal argument in *Jacobs*.[35] In contrast with the circumstances in *Jacobs*, Wittich seeks to rely on an unpublished opinion, which was contrary to the longstanding history of a one-year limitations period for asserting wrongful death claims.

### III. CONCLUSION

We affirm the opinion of the Court of Appeals.

All sitting. All concur.

---

[34] *Jacobs v. Lexington-Fayette Urban County Government*, 560 S.W.2d 10 (Ky. 1978).

[35] *Id.* at 14.

COUNSEL FOR APPELLANT:

Roger Newman Braden
Braden Humfleet & Devine, PLC


COUNSEL FOR APPELLEE:

Jennifer Zeigler Hoerner