RENDERED: MARCH 19, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0690-MR

WANDA CAMPBELL                                    APPELLANT

           APPEAL FROM HICKMAN CIRCUIT COURT
v.          HONORABLE TIMOTHY A. LANGFORD, JUDGE
               ACTION NO. 18-CR-00011

COMMONWEALTH OF KENTUCKY                APPELLEE

OPINION
AFFIRMING IN PART AND
REVERSING IN PART

** ** ** ** **

BEFORE: DIXON, JONES, AND KRAMER, JUDGES.

DIXON, JUDGE: Wanda Campbell appeals the judgment and sentence entered against her by the Hickman Circuit Court on March 6, 2020. Having reviewed the record, briefs, and law, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL BACKGROUND

O.W.[1] resided with his great-aunt, Wanda Campbell, for a period of nearly three years, beginning at age five. Campbell's great-niece, Tiffany, and her sister also lived with Campbell during that time.

In August 2017, when O.W. was in first grade at Hickman Elementary School, his teacher noticed flat, circular, light pink marks on his hands, which appeared to her to be burns. An investigator with the Department for Community Based Services (DCBS) was called to the school to investigate the marks. O.W. initially claimed the marks were bug bites, but he later disclosed the marks were cigarette burns.

In February 2018, O.W.'s teacher noticed he seemed to be in pain while at school. When the teacher lifted O.W.'s shirt, she observed marks across his back. She escorted him to the principal's office, and an investigator from the Cabinet for Health and Family Services (Cabinet) was called. The sheriff was also informed. During his investigation, the sheriff discovered that O.W. had gotten in trouble the night before for being kicked off the school bus. The sheriff interviewed Campbell, who admitted spanking O.W. the night before.

---

[1] Pursuant to Court policy, to protect the privacy of minor children, we refer to them by initials only.

On July 18, 2018, a grand jury charged Campbell with three counts of criminal abuse in the first degree.[2]  A jury trial was held on February 4, 2020. Witnesses testifying for the Commonwealth included O.W., O.W.'s first grade teacher, the DCBS investigator, the Cabinet investigator, and the sheriff.  Campbell and Tiffany were the only witnesses for the defense.  Six photographs taken by DCBS and Cabinet investigators were marked as exhibits and published to the jury. These photographs depicted injuries to O.W.'s back and bottom (direct view), full torso and bottom (side view), left arm pit area, and lower back and bottom, as well as the burn marks on both his right and left hands.

At trial, O.W. testified that Campbell burned his hands with a cigarette as punishment for eating a watermelon and showed the scars on his hands to the jury.  O.W. further testified that Campbell "whupped" him with a belt as punishment for getting kicked off the school bus, while Tiffany and her sister held him down.  O.W. testified concerning a third incident in which he claimed Campbell taped his mouth, feet, and hands, and later put him on a dog leash tied to a tree outside as punishment for eating a bowl of corn.  Campbell denied these allegations and admitted only to spanking O.W. four or fives times on his clothed bottom as punishment for being kicked off the school bus.  Tiffany's testimony was consistent with Campbell's.

---

[2] Kentucky Revised Statutes (KRS) 508.100, a Class C felony.

-3-

The jury was instructed on three counts of criminal abuse in the first degree, each count corresponding to the events described above. The jury returned its verdict finding Campbell guilty of the first two counts but not guilty as to the third. On the second count, the foreperson annotated, "We are not sure what was used for the whipping but we are sure it was not a hand." The jury recommended eight years for each of the two counts to run consecutively, for a total of sixteen years' imprisonment.

The trial court imposed the jury's recommendations in its judgment and sentence, as well as court costs and jail fees. This appeal followed.

## SUFFICIENT EVIDENCE TO SUPPORT CONVICTION

Campbell first argues the jury's verdict concerning count two was not supported by the evidence. She admits this issue is unpreserved but requests review for palpable error. RCr[3] 10.26 dictates:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

"RCr 10.26 authorizes us to reverse the trial court only upon a finding of manifest injustice. This occurs when the error so seriously affected the fairness, integrity, or

---

[3] Kentucky Rules of Criminal Procedure.

public reputation of the proceeding as to be shocking or jurisprudentially intolerable." *Roe v. Commonwealth*, 493 S.W.3d 814, 820 (Ky. 2015) (internal quotation marks and citations omitted).

The elements of first-degree criminal abuse are set forth in KRS 508.100(1), which provides:

> (1) A person is guilty of criminal abuse in the first degree when he intentionally abuses another person or permits another person of whom he has actual custody to be abused and thereby:
>
> > (a) Causes serious physical injury; or
> >
> > (b) Places him in a situation that may cause him serious physical injury; or
> >
> > (c) Causes torture, cruel confinement or cruel punishment;
>
> to a person twelve (12) years of age or less, or who is physically helpless or mentally helpless.

Notably absent from this statute is any language concerning instrumentality, much less any language indicating the instrumentality used to accomplish abuse is of consequence in obtaining a conviction. Indeed, Kentucky's highest court has held the jury need not even all agree on the instrumentality to support a conviction:

> This court recognizes and has consistently maintained that the jurors may reach a unanimous verdict even though they may not all agree upon the means or method by which a defendant has committed the criminal act. *Conrad v. Commonwealth*, 534 S.W.3d 779, 784 (Ky. 2017) (quoting *Miller v. Commonwealth*, 77 S.W.3d 566,

-5-

574 (Ky. 2002)) (A "conviction of the same offense under either of two alternative theories does not deprive a defendant of his right to a unanimous verdict if there is evidence to support a conviction under either theory.").

*King v. Commonwealth*, 554 S.W.3d 343, 352 (Ky. 2018).

The only three elements necessary to support a conviction under KRS 508.100 are: (1) intentional abuse, (2) cruel punishment, and (3) that the acts were to a minor under the age of 12. The full content of the jury instruction at issue herein reads:

> You, the jury, will find the Defendant, Wanda M. Campbell, guilty of Criminal Abuse in the First Degree under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county on or about the 15th day of February, 2018 and before the finding of the Indictment herein, the Defendant, Wanda M. Campbell, intentionally abused O.W., a person of whom she had actual custody, by whipping O.W. with a belt for acting up on the school bus;
>
> AND
>
> B: That the Defendant, Wanda M. Campbell, thereby caused cruel punishment;
>
> AND
>
> C: That O.W. was, at that time, less than 12 years of age.

The only section of this instruction Campbell now challenges is part "A[.]"

Comparing this instruction to the elements required under the statute reveals part

"A" concerns the element of intentional abuse; any language concerning the instrumentality—*i.e.*, whether a belt was used in accomplishing said abuse—is essentially superfluous for finding guilt. Here, the language about the modality served merely to distinguish each count from another. We, like the jury, are satisfied the Commonwealth produced sufficient proof to meet the required element of intentional abuse.

Nevertheless, Campbell contends the only evidence presented at trial was that O.W. was struck by a belt or a hand; consequently, she asserts a finding that he was whipped with anything else is not supported by any evidence. Thus, according to Campbell, since the jury rejected evidence that O.W. was whipped with a hand and expressed doubt as to whether he was whipped with a belt, there was insufficient evidence to support its verdict. This approach, however, not only improperly places significance on the instrumentality but also ignores the evidence presented at trial by way of exhibits—namely, the photographs. There is good reason behind the adage "a picture is worth a thousand words." Those photographs and the story they undoubtedly told the jury are evidence more than sufficient to support a finding of guilt as to the second count of first-degree criminal abuse.

## COURT COSTS

Campbell contends the trial court improperly assessed court costs against her in violation of KRS 23A.205(2) because she is a "poor person" and in

-7-

violation of KRS 534.020(2)(b) because the payment could not be collected within a year. She claims to have adequately preserved these arguments but in the alternative requests palpable error review.

Concerning Campbell's argument that the trial court was prohibited from imposing court costs upon her as a "poor person[,]" we find *Spicer v. Commonwealth*, 442 S.W.3d 26 (Ky. 2014), instructive, yet distinguishable. There, the Court held:

> The assessment of court costs in a judgment fixing sentencing is illegal only if it orders a person adjudged to be "poor" to pay costs. Thus, while an appellate court may reverse court costs on appeal to rectify an illegal sentence, we will not go so far as to remand a *facially-valid* sentence to determine if there was in fact error. If a trial judge was not asked at sentencing to determine the defendant's poverty status *and did not otherwise presume the defendant to be an indigent or poor person before imposing court costs*, then there is no error to correct on appeal. This is because there is no affront to justice when we affirm the assessment of court costs upon a defendant whose status was not determined. It is only when the defendant's poverty status has been established, and court costs assessed contrary to that status, that we have a genuine "sentencing error" to correct on appeal.

*Id.* at 35 (emphasis added).

We first note the importance of a facially-valid sentence. Under KRS 23A.205(1), "Court costs for a criminal case in the Circuit Court *shall* be one hundred dollars ($100)." (Emphasis added.) Here, the trial court marked through

that pre-printed amount on the judgment and sentence form and handwrote an amount of $175. This was statutorily impermissible.

We next note, although it was not asked at sentencing to determine Campbell's poverty status, the trial court took it upon itself to enter a separate order specifically finding Campbell *not* to be a "poor person[.]" Its order noted that Campbell draws $1,500 per month from an assistance program, which would render her not a "poor person" within the meaning of KRS 23A.205(2). That subsection states:

> The taxation of court costs against a defendant, upon conviction in a case, shall be mandatory and shall not be subject to probation, suspension, proration, deduction, or other form of nonimposition in the terms of a plea bargain or otherwise, unless the court finds that the defendant is a poor person as defined by KRS 453.190(2) and that he or she is unable to pay court costs and will be unable to pay the court costs in the foreseeable future.

KRS 453.190(2) defines a "poor person" as:

> a person who has an income at or below one hundred percent (100%) on the sliding scale of indigency established by the Supreme Court of Kentucky by rule or is unable to pay the costs and fees of the proceeding in which he is involved without depriving himself or his dependents of the necessities of life, including food, shelter, or clothing.

This figure is based on the current federal poverty guidelines.

In March 2020, the poverty threshold for a single individual household was annual income of $12,490. Campbell's annual income from Social

Security was $18,000 at the time of sentencing; however, it was brought to the trial court's attention that she would be ineligible to continue to draw these benefits during her incarceration.

Even so, the trial court should have determined whether "she is unable to pay court costs and will be unable to pay the court costs in the foreseeable future" under KRS 23A.205(2). *See Sevier v. Commonwealth*, 434 S.W.3d 443, 471 n.106 (Ky. 2014) (quoting *Maynes v. Commonwealth*, 361 S.W.3d 922, 930 (Ky. 2012) ("Without some reasonable basis for believing that the defendant can or will soon be able to pay, the imposition of court costs is indeed improper.")); *Butler v. Commonwealth*, 367 S.W.3d 609 (Ky. App. 2012) (also quoting *Maynes*, 361 S.W.3d at 930).

Furthermore, KRS 534.020(2)(b) requires that all court costs be paid within one year of sentencing. Here, the trial court deferred payment until "6 months after release[.]" In light of Campbell's sixteen-year prison sentence,[4] it is inconceivable that she will even be released within one year of the date of sentencing. *See Applegate v. Commonwealth*, 577 S.W.3d 83, 88 (Ky. App. 2018) ("We likewise agree the trial court erred in ordering Applegate to pay court costs in installments beginning sixty days after his release, as these necessarily could not

---

[4] Under 501 Kentucky Administrative Code (KAR) 1:030, Campbell must serve 20% of her sentence—3.2 years—before being eligible for parole.

be paid within one year of the date of sentencing as required by KRS 23A.205(3).”); *Jones v. Commonwealth*, 527 S.W.3d 820, 824 (Ky. App. 2017) (It was uncertain Jones would be released and able to pay the court costs within one year as required under the statute.). The imposition of court costs must be accomplished in conformity with KRS 534.020(2)(b). Therefore, the portion of the judgment and sentence imposing court costs is reversed.

## JAIL FEES

Campbell's final argument is that the trial court erred when it imposed jail fees without evidence of a jail fee reimbursement policy. She admits this issue is unpreserved and requests review for palpable error.

Jail fees were imposed in the judgment and sentence, as well as further addressed in a separate order. In pertinent part, the separate order stated:

> The Court having been advised that the defendant having been incarcerated in jail prior to the date of sentencing, and the Court being further aware that Hickman County no longer operates the jail and the court having been further advised that Hickman County pays to the Ballard County Jail the sum of $25.00 per day to house Hickman County prisoners and the Court finding that this is an actual out of pocket expense that Hickman County incurs to house its' [sic] prisoners, not including costs of transportation, and *the Court finding that this costs* [sic] *is reasonable pursuant to KRS 441.265*, and being otherwise sufficiently advised . . . .

(Emphasis added.) Campbell correctly asserts that the trial court failed to make any finding that the jailer adopted, with the approval of the county's governing

-11-

body, a prisoner fee and expense reimbursement policy under KRS 441.265(2)(a). In the absence of such a finding, the trial court improperly imposed jail fees on Campbell.

Campbell also points out that this trial court is no stranger to reversal on this issue. *See Jackson v. Commonwealth*, No. 2018-CA-000543-MR, 2019 WL 2246172 (Ky. App. May 24, 2019); *Bishop v. Commonwealth*, No. 2017-CA-001793-MR, 2019 WL 103924 (Ky. App. Jan. 4, 2019); *Weatherly v. Commonwealth*, No. 2017-SC-000522-MR, 2018 WL 4628570 (Ky. Sept. 27, 2018).[5] Nonetheless, the Commonwealth urges us to follow a more recent decision by another panel of our Court, dealing with the same trial court, which found:

> The order of the circuit court assessing jail fees specifically points out that the fee of $22 a day was adopted by Fulton County "pursuant to applicable statute." The cases above involved this issue from this same circuit wherein there was no indication in the record that the per diem rate was established in accordance with the statute. Now that the order assessing establishes that the per diem fee was established as the law requires, and as there was no objection to the manner in which the county so established the per diem, the assessment shall stand.

---

[5] "[U]npublished Kentucky appellate decisions, rendered after January 1, 2003, may be cited for consideration by the court if there is no published opinion that would adequately address the issue before the court." Kentucky Rules of Civil Procedure (CR) 76.28(4)(c). Unpublished opinions may be cited by the Court as persuasive. *Estate of Wittich By and Through Wittich v. Flick*, 519 S.W.3d 774, 779 (Ky. 2017).

*McAllister v. Commonwealth*, No. 2019-CA-000243-MR, 2020 WL 4917921, at *3 (Ky. App. Aug. 21, 2020), *discretionary review denied* (Dec. 9, 2020).  Our panel does not have before us the benefit of that record or entirety of the order at issue in that case.  We do, however, have the record of this case before us, as well as the entirety of the orders imposing jail fees upon Campbell.  After careful review, we find the orders herein suffer from the same fatal flaws pointed out in *Jackson*, *Bishop*, and *Weatherly*.  Accordingly, the portion of the judgment and sentence imposing jail fees herein is reversed.

## CONCLUSION

Therefore, and for the foregoing reasons, the order of the Hickman Circuit Court is AFFIRMED as to Campbell's conviction but REVERSED as to its imposition of costs and jail fees.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Aaron Reed Baker
Assistant Public Advocate
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Robert Baldridge
Assistant Attorney General
Frankfort, Kentucky