RENDERED:  APRIL 24, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1039-MR

TYLER MEADE, AS
ADMINISTRATOR OF THE ESTATE
OF BARBARA WORKS                                                   APPELLANT


                    APPEAL FROM BOONE CIRCUIT COURT
v.              HONORABLE JAMES R. SCHRAND, II, JUDGE
                    ACTION NO. 21-CI-00704 & 22-CI-01160


WILLIAM SIEFERT, M.D.;
NORTHERN KENTUCKY CENTER
FOR PAIN RELIEF, LLC; AND
TIMOTHY EHN, D.C.                                                   APPELLEES


                              OPINION
                             REVERSING

                          ** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ACREE AND A. JONES, JUDGES.

ACREE, JUDGE:  Tyler Meade, as Administrator of his mother's estate, appeals

from a Boone Circuit Court order dismissing his complaint as time-barred.

Finding his complaint timely because the statute of limitations was tolled, we

reverse.

# BACKGROUND

Appellant Tyler Meade's mother, Barbara Works (decedent), died in May 2017 while under the care and treatment of Appellee Dr. William Siefert at Northern Kentucky Center for Pain Relief. At the time of her death, Meade knew Works to struggle with addiction issues and knew she received prescription painkillers. Her cause of death, according to the Kenton County Coroner's office, was "Drug Intoxication" and "Hydrocodone."

Dr. Siefert and Appellee Dr. Ehn later became the subject of a joint DEA, FBI, and Kentucky Medicaid Fraud and Abuse investigation and indictment in February 2021. The indictment alleged Dr. Siefert had engaged in an "illegal opioid prescribing conspiracy" that was a "contributing factor" in the deaths of Works and several others. (Appellant Appx. 3). As alleged, Dr. Siefert sought to profit from the conspiracy by billing Medicaid for millions of dollars in medically unnecessary urinalysis testing.

Law enforcement contacted Meade in April 2021 in connection with this matter. Roughly sixteen months later, Meade was appointed administrator of Works' estate. He subsequently commenced this action, which the Boone Circuit Court dismissed on statute of limitations grounds. Meade now appeals.

Additional facts will be set forth as necessary.

## ANALYSIS

Whether an action is barred by the statute of limitations is a question of law we review de novo. *Cuppy v. General Acc. Fire & Life Assur. Corp.*, 378 S.W.2d, 629, 631 (Ky. 1964).

We begin by setting out the chronology critical to our review.

- In May 2017, Works died.

- In June 2017, Works' Death Certificate was issued, stating cause of death was "Drug Intoxication" and "Hydrocodone."

- In February 2021, Dr. Siefert and Dr. Ehn were indicted.

- In April 2021, a DEA Investigator contacted Meade to discuss the indictment.

- In July 2022, Meade was appointed administrator of Works' estate.

- In August 2022, Meade unsuccessfully attempted to intervene in another wrongful death action against Dr. Siefert and Dr. Ehn.

- In October 2022, Meade filed this original action against Dr. Siefert and Dr. Ehn.

Meade brought this wrongful death action pursuant to KRS[1] 411.130, which we have long held is subject to the statute of limitations established in KRS 413.180. The statute provides:

---

[1] Kentucky Revised Statutes.

-3-

(1) If a person entitled to bring any action mentioned in KRS 413.090 to 413.160 dies before the expiration of the time limited for its commencement and the cause of action survives, the action may be brought by his personal representative after the expiration of that time, if commenced within one (1) year after the qualification of the representative.

(2) If a person dies before the time at which the right to bring any action mentioned in KRS 413.090 to 413.160 would have accrued to him if he had continued alive, and there is an interval of more than one (1) year between his death and the qualification of his personal representative, that representative, for purposes of this chapter, shall be deemed to have qualified on the last day of the one-year period.

Under this statute, a wrongful death claim commences upon the appointment of a personal representative *or* no longer than two years from the date of death. *Estate of Wittich By and Through Wittich v. Flick*, 519 S.W.3d 774, 777 (Ky. 2017) (citing *Gaither v. Commonwealth*, 161 S.W.3d 345, 348 (Ky. App. 2004)).

In *Wittich*, the Kentucky Supreme Court stated "if Wittich were able to argue successfully that [defendant] was absconding, concealing, or obstructing the prosecution of the Estate's claim until conviction, then the statute of limitations would be tolled until the condition has abated." *Id*. at 778.

In recognizing a plaintiff's duty to exercise reasonable care and diligence to uncover any potential legal claims, the court determined that the defendant being immediately apprehended at the scene of the murder, arrested and charged for the crime, and eventually indicted within a matter of months did not

constitute absconding or concealing in such a way that would trigger tolling under KRS 413.190. Instead of adopting a rule tolling the running of the limitations period in murder cases until the defendant's conviction, the circumstances presented to Wittich's estate meant Wittich's estate knew or should have known of the injury and potential claim "by the date of [the defendant's] public indictment." *Id*. at 778. Despite Flick being apprehended at the scene, the triggering event establishing a cause of action for purposes of KRS 413.180 was the indictment date. By the time the estate filed its complaint, it had been 39 months since the defendant killed Wittich and 37 months since his public indictment.

Reading both sections of KRS 413.180 in tandem, where, as here, a cause of action accrues after a decedent's death, and a personal representative is appointed more than one (1) year after the date of death, the personal representative qualifies as of the last day of the one-year period and has one (1) year from the date of qualification to bring an action. To wit, a personal representative has two (2) years from the date of death to bring a claim if the elements of KRS 413.180 are met. This calculation is well understood in our jurisprudence. *See Conner v. George W. Whitesides Co.*, 834 S.W.2d 652, 655 (Ky. 1992) ("The net effect of this statute in this case is to provide two years from the date of death to appoint a personal representative and commence a cause of action for wrongful death.").

Meade falls in the two-year category. Although Works died in May 2017, he was not appointed as personal representative until July 2022. Ehn advocates for an interpretation that would require this Court to ignore KRS 413.180(1) and focus solely on KRS 413.180(2). While we agree with Dr. Ehn that KRS 413.180(2) qualified Meade on the last day of the one-year anniversary of Works' death, May 2018, KRS 413.180(1) provided Meade with one year from the date of qualification to bring a claim, which would be May 2019.

Having determined Meade had two (2) years from the date of accrual to bring a claim, we are next tasked with determining whether the time was tolled. KRS 413.190 permits the tolling of the statute of limitations in certain circumstances. Specifically,

> When a cause of action mentioned in KRS 413.090 to 413.160 accrues against a resident of this state, and he by absconding or concealing himself or by any other indirect means obstructs the prosecution of the action, the time of the continuance of the absence from the state or obstruction *shall not be computed as any part of the period within which the action shall be commenced*. But this saving shall not prevent the limitation from operating in favor of any other person not so acting, whether he is a necessary party to the action or not.

KRS 413.190(2) (emphasis added). Dr. Siefert and Dr. Ehn engaged in active health care fraud which concealed their illegal opioid prescribing conspiracy. They were indicted, convicted, and are currently serving sentences for health care fraud. There is little room, if any, to debate Dr. Siefert and Dr. Ehn's concealment

and obstruction of prosecution; we find the absconding, concealing, or obstruction of prosecution element to be met. The question is *when* Meade ought to have known of the potential cause of action against them.

The cause of action did not accrue on the date of Works' death in May 2017. Discovery has established that Meade knew Dr. Siefert provided treatment, including medications, for his mother. Meade testified at Dr. Siefert and Dr. Ehn's criminal trial that he found prescription bottles printed with Dr. Siefert's name within a matter of days following Works' death. Meade also knew his mother picked up a prescription on the day she died.

If we were to adopt the reasoning proposed by Appellees, these facts would be sufficient to provide Meade with a reason to know a cause of action existed against them. We disagree. This conclusion ignores the critical fact that Meade knew his mother to struggle with addiction. We cannot say Meade reasonably should have known that Dr. Siefert was engaged in an illegal opioid prescribing conspiracy without considering all facts known to Meade at the time, namely that he knew Works abused drugs.

At Dr. Siefert and Dr. Ehn's criminal trial, Meade testified he made the decision to move in with his grandparents at the age of twelve, motivated by his mother's addiction. He nevertheless maintained a relationship with his mother by "tr[ying his] best" to talk to her every day and, when he turned sixteen, by

driving to visit her. (Record (R.) at 570-71). He noticed when she was still using heavily by slurred speech or impaired thinking, estimating there "may have been a day or two" when Meade perceived her to be lucid or clear-minded. (R. at 575).

Meade testified that on the day of Works' death, they spoke on the phone, and she told him she needed to "go get some prescriptions." (R. at 572). His mother did not divulge, and he did not ask where she obtained her pills; she did not specify whether she would be picking up the prescription from a non-doctor "person-on-the-street" as he had seen her do before, or whether she would receive them from a pain clinic.

With respect to Dr. Siefert, Meade stated he knew Dr. Siefert was treating Works for pain relief following a 2007 work accident which caused a gate to fall on her.

We cannot say the mere presence of prescription bottles with Siefert's name in Works' home at the time of death conclusively gave Meade reason to know his mother was subjected to an illegal opioid prescribing regimen. This is unlike the murder in *Wittich*, wherein the defendant was apprehended on the scene for his acts against Wittich.[2] Meade was presented with a scenario that reasonably left doubt as to the cause of her death. That Meade knew Dr. Siefert was treating

---

[2] Even so, the *Wittich* court found the date at which Wittich's parents had reason to know of the potential cause of action against Flick was the date of indictment. Despite Flick's on-site arrest, this was not sufficient to conclusively establish knowledge.

-8-

Works for pain management and the presence of his prescriptions in Works' home is insufficient to *conclusively establish* Meade's claims as time-barred.

Meade had personal knowledge that his mother was an addict and obtained prescriptions from non-doctors. He did not have personal knowledge—or constructive knowledge—that Dr. Siefert and Dr. Ehn were engaged in an illegal opioid prescribing scheme. We find it unlikely Meade would have any reason to know of the full magnitude of Appellees' misconduct and its impact on Works. To the contrary, discovery has established that Appellees went to lengths to ensure others would *not* become aware of their scheme.

Similarly, the cause of action did not accrue on the date Works' death certificate was issued in June 2017. The death certificate listed "Drug Intoxication" and "Hydrocodone" as the causes of death with no reference to "Acute Polypharmacy Intoxication" as was the case for another plaintiff in this matter below. Instead, the certificate was consistent with what Meade knew of his mother's longtime struggle with addiction. It did not conclusively give him reason to believe his mother's death may have been proximately caused by a third party.

We find the date of accrual for Meade's wrongful death claim was February 2021, when Dr. Siefert and Dr. Ehn were publicly indicted for their crimes associated with Works' care. "[B]y the date of [defendant's] public

indictment, [the] estate knew or should have known of the injury . . . and that it was likely caused by [defendant's] conduct." *Wittich*, 519 S.W.3d at 769.

The trial court reached the same conclusion concerning its analysis of KRS 413.190(2). "[R]esolving all doubts in [Meade's] favor, the facts of liability were only made clear to him as of the February 2021 indictment."[3] (Order at 11). We agree. However, where the trial court fell short is in its incorrect calculation of the time Meade was afforded to bring his claim after the tolling expired. Therefore, we find KRS 413.190(2) tolled the date of accrual to the date Dr. Siefert was publicly indicted for crimes associated with his care of Works—February 2021. With the date of accrual being February 2021, and with Meade being appointed as personal representative over one year from that date, KRS 413.180 provides Meade with two (2) years to bring a claim against Siefert. That date is February 2023. Meade filed his original action in October 2022, well before the point at which his claim would be time-barred. We must conclude the trial court erred in dismissing Meade's complaint due to its misapplication of KRS 413.180.

We reject the Appellees' argument that KRS 413.180 must be strictly construed such that the date of death is the only plausible date of accrual and KRS

---

[3] In its order, the trial court engaged in some analysis regarding a more "generous" application of KRS 413.190(2) which would set the accrual date at April 2021 when Meade was contacted by a DEA Investigator. Meade advocates for the same calculation on appeal. However, for reasons set forth herein, we find the correct accrual date to be February 2021 pursuant to *Wittich* and therefore reject the argument in favor of the "most generous" application.

413.190(2) cannot be applied to toll the date of death to the actual date of accrual. This interpretation undermines the intent of equitable tolling. Our tolling statute "has been on our books for many years" and "is essentially a recognition in law of an equitable estoppel or estoppel in pais to prevent a fraudulent or inequitable resort to a plea of limitations." *Adams v. Ison*, 249 S.W.2d 791, 793 (Ky. 1952). The purpose of tolling the statute of limitations in situations such as the one before us is to "prevent a defendant from concealing the plaintiff's cause of action." *Sneed v. Univ. of Louisville Hosp.*, 600 S.W.3d 221, 229 (Ky. 2020). Moreover, *Wittich*, a case to which Siefert directs us, explicitly supports our calculation: *If* Wittich were able to demonstrate absconding, concealing, or obstructing the prosecution, then the tolling effect of KRS 413.190(2) would apply—*before* a two-year statute of limitations under KRS 413.180(2) would begin to run. *Wittich*, 519 S.W.3d at 778.

To decline the application of KRS 413.190 in this case would enable Appellees to effectively have concealed Works' cause of action through their health care fraud scheme; this outcome is precisely the result our tolling statute seeks to avoid. There is no other option than to toll the statute of limitations and give effect to our longstanding precedent.

We make no judgment as to the merits of Meade's claims and instead speak solely to the issue of whether Meade's claim is time-barred, which it is not.

Accordingly, we REVERSE the judgment of the Boone Circuit Court and remand for further proceedings consistent with this Opinion.

ALL CONCUR.

BRIEF FOR APPELLANT:

Kenneth C. Human
Lexington, Kentucky

BRIEF FOR APPELLEE WILLIAM
SIEFERT, M.D.:

Aaron A. VanderLaan
Covington, Kentucky

BRIEF FOR APPELLEE TIMOTHY
EHN, D.C.:

Charles J. Davis
Cincinnati, Ohio

Nathan A. Lennon
Ft. Mitchell, Kentucky